STATE OF NORTH CAROLINA v. RANDY JOE PAYNE

No. 355A92

(Filed 9 September 1994)

## 1. Criminal Law § 103 (NCI4th)— capital sentencing—prior crimes to be introduced by State—disclosure motion properly denied

The trial court did not err in the denial of defendant's motion to require the State to disclose evidence of prior crimes or bad acts by defendant that the State intended to introduce at a capital resentencing hearing pursuant to Rule 404(b) since (1) this rule addresses the admissibility of evidence and is not a discovery statute which requires the State to disclose such evidence as it might introduce thereunder; (2) the State did not directly introduce or use evidence of prior crimes or bad acts committed by defendant but only cross-examined defendant about the acts; and (3) the motion did not request a copy of defendant's criminal record, and defendant's failure to make such a request waived his right to discovery of his record under N.C.G.S. § 15A-903(c). N.C.G.S. § 8C-1, Rule 404(b)(1992).

**Am Jur 2d, Depositions and Discovery § 438.**

## 2. Jury § 141 (NCI4th)— capital sentencing—jury voir dire— beliefs about parole eligibility—questions properly excluded

The trial court properly denied defendant's oral motion for permission to question potential jurors in a capital sentencing proceeding regarding their beliefs about parole eligibility where defendant would have been eligible for parole had he been given a life sentence.

**Am Jur 2d, Jury §§ 201, 202.**

## 3. Criminal Law § 1303 (NCI4th); Jury § 70 (NCI4th)— capital sentencing—defendant's life sentence for rape— instruction to prospective jurors not required

The trial court did not err by denying defendant's request that prospective jurors in a resentencing hearing for first-degree murder be instructed during preselection that defendant had received a life sentence for first-degree rape of the victim since nothing in N.C.G.S. § 15A-1213 or in the case law requires the court to

instruct prospective jurors about sentences defendant may have received for other offenses either related or unrelated to the crime for which the jurors ultimately selected will recommend sentencing. The Court did not reach the merits of defendant's argument that he was entitled to present his life sentence to the jury as mitigating evidence pursuant to *Lockett v. Ohio*, 438 U.S. 586, and its progeny because defendant never moved to introduce the rape sentence at any time during the evidentiary phase of the resentencing proceeding.

**Am Jur 2d, Criminal Law § 600; Jury §§ 189 et seq.**

4. **Constitutional Law § 230 (NCI4th); Criminal Law § 412 (NCI4th)— capital resentencing—statement to jury panel—opening statement—aggravating circumstance not submitted in prior hearing—comments not in bad faith**

The prosecutor did not act in bad faith in a third capital sentencing proceeding by his comments to the prospective jury panel and in his opening statement that the State intended to rely on the especially heinous, atrocious, or cruel aggravating circumstance when he knew that this aggravating circumstance had not been submitted to the jury in the second sentencing proceeding, and the trial court was not required to intervene *ex mero motu*, where the prosecutor also knew that this circumstance had been submitted and found in the first sentencing proceeding and that, though the circumstance was not submitted in the second proceeding, on appeal the N.C. Supreme Court did not address the question of whether the evidence was sufficient to support this circumstance.

**Am Jur 2d, Trial §§ 513 et seq.**

5. **Criminal Law § 1309 (NCI4th)— capital resentencing— questions about victim's wounds—no injection of heinous, atrocious, or cruel aggravating circumstance into hearing**

The prosecutor did not improperly inject the especially heinous, atrocious, or cruel aggravating circumstance into a capital resentencing hearing by asking witnesses about the victim's defensive and other wounds when he knew that this circumstance was not submitted to the jury in a prior sentencing hearing where the prosecutor's questions did not refer specifically to the circumstance and were relevant to sentencing because the jury had to hear evidence concerning the offense in order to

consider the aggravating circumstance of whether the capital felony was committed while the defendant was engaged in the commission of a rape.

**Am Jur 2d, Criminal Law §§ 598, 599**

6. **Criminal Law § 455 (NCI4th)— capital sentencing—prosecutor's argument—death penalty—deterrence of defendant—not comment about parole**

The prosecutor's jury argument in a capital resentencing hearing that the only way to be sure that defendant never did this again is to give him the death penalty did not suggest to the jury that defendant might be released on parole if sentenced to life and was not improper since the prosecutor never mentioned parole or the consequences of life imprisonment, and specific deterrence arguments and arguments that death will have a deterrent effect on defendant personally are permissible during the penalty phase of a capital trial.

**Am Jur 2d, Trial §§ 572 et seq.**

**Prejudicial effect of statement of prosecutor as to possibility of pardon or parole. 16 ALR3d 1137.**

7. **Criminal Law § 1361 (NCI4th)— capital sentencing— impaired capacity mitigating circumstance—intoxication— instructions**

The trial court's statement in its instructions to the jury on the mitigating circumstance of impaired capacity in a capital sentencing proceeding that "generally voluntary intoxication is no excuse for crime" could not have misled jurors to interpret impaired capacity as excluding impairment due to voluntary gasoline or alcohol intoxication since (1) it was immediately followed by the statement that a juror would find this circumstance if he or she found that defendant sniffed gas, drank beer or was of low intelligence so that his capacity to appreciate the criminality of his conduct was impaired, and (2) the statement, when considered in context of the whole instruction, merely reiterated the court's prior instruction that a finding of a mitigating circumstance is not the equivalent of excusing the crime and in essence assured the jury that it would not be excusing defendant of culpability for the murder if it were to find the mitigating circumstance.

**Am Jur 2d, Criminal Law §§ 598, 599.**

8. **Criminal Law § 452 (NCI4th)— capital sentencing—prosecutor's argument—gasoline inhalation—voluntary intoxication—impaired capacity mitigating circumstance—proper comment on weight**

The prosecutor did not improperly urge the jury in a capital resentencing hearing to reject voluntary gasoline inhalation as mitigating because it does not qualify as an excuse for the crime when he stated in his closing argument, "He goes and voluntarily does that, and voluntary intoxication of any kind is no excuse for any crime in this State. If it was, he would have been found not guilty by reason of insanity," where these statements were immediately followed by statements to the effect that a doctor's testimony indicated that defendant's appreciation of the criminality of his actions might have been impaired but that the possible impairment was insignificant in light of the brutal attack on the victim. In the context of the whole argument, the prosecutor's statements were directed to the weight the jury should give the impaired capacity mitigating circumstance.

**Am Jur 2d, Trial §§ 572 et seq.**

9. **Criminal Law § 1358 (NCI4th)— capital sentencing—mental or emotional disturbance mitigating circumstance—possible sources—propriety of instructions**

The trial court did not err by failing to include personality disorder and borderline intelligence as grounds for considering the mental or emotional disturbance mitigating circumstance in an instruction which included the effects of gasoline sniffing and alcohol consumption as evidence of this circumstance where the instruction did not preclude the jurors from considering other evidence in addition to gasoline sniffing and alcohol consumption; neither of defendant's experts stated that, at the time defendant murdered the victim, he was under the influence of a mental or emotional disturbance as a result of a borderline I.Q. or a personality disorder; defendant's experts did testify that defendant suffered from a lowered I.Q., neurological damage, impaired attention span, and impulse control problems as a result of his long-term inhalation of gasoline; and the instruction thus accorded with defendant's evidence in that the jury could consider defendant's lower intellectual functioning as one of the effects of his substance abuse. Furthermore, the trial court's use of the con-

junctive in this instruction accorded with defendant's evidence that the effects of gasoline inhalation and alcohol intoxication interact with each other and cause a greater effect than if administered separately and was not plain error.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

**Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.**

**10. Criminal Law § 1360 (NCI4th)— capital sentencing— impaired capacity mitigating circumstance—possible sources—propriety of instructions**

The trial court did not err by failing to mention defendant's personality disorder as a possible source of the impaired capacity mitigating circumstance in an instruction which included gasoline inhalation, alcohol consumption and low intelligence as possible causes of this circumstance where defendant's experts did not link defendant's personality disorders to any impairment in capacity; one expert stated that they were the result of substance abuse; and the instruction did not preclude the jury from considering other evidence. Furthermore, the trial court's use of the conjunctive in this instruction accorded with defendant's evidence which concentrated on the combined effects of gasoline inhalation, alcohol consumption and lower intelligence and was not plain error.

**Am Jur 2d, Criminal Law §§ 598, 599.**

**Comment Note.—Mental or emotional condition as diminishing responsibility for crime. 22 ALR3d 1228.**

**Effect of voluntary drug intoxication upon criminal responsibility. 73 ALR3d 98.**

**11. Criminal Law § 1355 (NCI4th)— capital sentencing—mitigating circumstance—no significant criminal history—use of "little, if any" in instruction—no plain error**

The trial court's use of the phrase "little, if any" prior criminal activity in its instruction on the no significant history of criminal activity mitigating circumstance was not plain error when considered in context where the instruction correctly informed the

jury that, in determining the significance of defendant's criminal history, it should consider the nature and quality of defendant's activity rather than focus solely on the number of acts; no evidence of prior convictions and only a small amount of evidence of prior criminal activity by defendant was presented, so that a reasonable juror was unlikely to have found that defendant had a significant number of prior acts or convictions and rejected this mitigating circumstance on that basis alone; and the phrase was in the form of "would find," which suggests a possibility, rather than "must find," which would operate as a condition to making the finding.

Am Jur 2d, Criminal Law §§ 598, 599.

**12. Criminal Law § 1326 (NCI4th)— capital sentencing—mitigating circumstances—burden of proof—instructions**

The trial court's failure to define "preponderance of the evidence" of its own accord in its instructions on defendant's burden of proof for mitigating circumstances was not plain error. Nor was there plain error in the trial court's explanation that "preponderance of the evidence" requires that the evidence "satisfy" the juror that the circumstance exists.

Am Jur 2d, Trial §§ 1441 et seq.

**13. Criminal Law § 1323 (NCI4th)— capital sentencing—nonstatutory mitigating circumstances—mitigating value—instruction**

The trial court did not err by instructing the jury that it could consider nonstatutory mitigating circumstances if it found that such circumstances existed and that such circumstances had mitigating value.

Am Jur 2d, Trial §§ 1441 et seq.

**14. Criminal Law §§ 1357, 1360 (NCI4th)— capital sentencing—rejection of mitigating circumstances by jury—no constitutional or statutory violation**

The rejection by all jurors in a capital sentencing hearing of the mental or emotional disturbance and impaired capacity mitigating circumstances was not arbitrary and did not violate either the Eighth Amendment of the U.S. Constitution or N.C.G.S. § 15A-2000(d)(2) where the evidence presented as to these circumstances was not uncontroverted as defendant contended,

and a reasonable juror could have found that the testimony of defendant's experts was not inherently credible. N.C.G.S. §§ 15A-2000(f)(2), 15A-2000(f)(6).

**Am Jur 2d, Criminal Law §§ 598, 599.**

**15. Criminal Law § 1373 (NCI4th)— death penalty not excessive or disproportionate**

A sentence of death imposed upon defendant for first-degree murder was not excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant, where defendant was found guilty based on both the felony murder rule and malice, premeditation and deliberation; the jury found no mitigating circumstances and found as an aggravating circumstance that the murder was committed while defendant was engaged in the commission of a rape; and the evidence tended to show: the twenty-eight-year-old defendant broke into the victim's home and brutally killed her by sixteen blows with a hatchet to her head, neck, back, arms and hands; defendant raped the victim while she was still alive; defendant showed no remorse for the crime; and after the murder, defendant returned to a barn, hid the hatchet, changed clothes, and slept.

**Am Jur 2d, Criminal Law § 628.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Appeal of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Seay, J., at the 21 September 1992 Criminal Session of Superior Court, Alexander County, on a jury verdict finding defendant guilty of first-degree murder. Heard in the Supreme Court 11 May 1994.

*Malcolm Ray Hunter, Jr., Appellate Defender, by Benjamin Sendor, Assistant Appellate Defender, for defendant-appellant.*

*Michael F. Easley, Attorney General, by Ralf F. Haskell, Special Deputy Attorney General, for the State.*

WHICHARD, Justice.

This appeal is from a resentencing proceeding. In 1985 at defendant's first trial, he was convicted of the first-degree rape and first-degree murder of Kathleen Weaver, a sixty-nine-year-old widow, and sentenced to death for the murder and a consecutive mandatory life sentence for the rape. On defendant's first appeal, we ordered a new trial. *See State v. Payne*, 320 N.C. 138, 357 S.E.2d 612 (1987). In 1988 at defendant's second trial, he again was convicted of the first-degree rape and first-degree murder of Kathleen Weaver. He was sentenced to mandatory life imprisonment for the first-degree rape, to run consecutively to the death sentence he received for the first-degree murder. On defendant's second appeal, *State v. Payne*, 328 N.C. 377, 402 S.E.2d 582 (1991) [hereinafter *Payne II*], we found no error in the guilt phase of his trial but ordered a new sentencing proceeding on the first-degree murder conviction based on the United States Supreme Court's decision in *McKoy v. North Carolina*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 327 N.C. 31, 394 S.E.2d 426 (1990). The evidence presented in the guilt phase of defendant's trial is summarized in *Payne II*, 328 N.C. at 384-86, 402 S.E.2d at 586-87. The issues raised here relate only to resentencing; therefore, we will discuss only such evidence as is necessary for this appeal.

The State's evidence tended to show that on 9 November 1983 Kathleen Weaver lived alone in Lexington, North Carolina. On that day between 10:15 a.m. and 10:30 a.m., Frances Leonard, an employee of an animal hospital located across from Mrs. Weaver's home, was looking out a window of the hospital toward the back door of Mrs. Weaver's home. She saw the back door fly open. A man ran from the house, across the yard, and jumped over a chain-link fence. She saw something green in the man's hand and noted that he was wearing a white or yellow T-shirt and jeans or faded pants. She left the window to alert a fellow worker. When she returned she saw a man's feet sticking out of the door of a barn located behind the hospital.

Sergeant Robert Henderson and Officer Kenneth Owens from the Sheriff's Department arrived at approximately 10:40 a.m. They entered the barn and noticed a can of gasoline. They found defendant asleep upstairs in a loft. He was wearing blue jeans and a brown shirt.

Sergeant Henderson then entered Mrs. Weaver's home where he found her body covered in blood on the floor. Her legs were spread apart and her pajamas were split in the crotch area. He noticed that

there were bloodstains on the bed, which was in disarray. He left the house and secured the scene.

Chief Deputy Johnson arrived shortly thereafter and entered Mrs. Weaver's home. He saw that the back door had been pried open and found bloodstains in the kitchen and hallway. He entered the bedroom and saw Mrs. Weaver's body. He noted that there were several wounds on her left hand that appeared to be defense wounds. Johnson then left the house and went to the barn. He raised a loose board in the floor of the barn and found a hatchet and a white sock drenched in blood. The hatchet and sock were only a few feet inside the door, which suggested that had a man run into the barn and either fallen or lain down to put something under the board in the floor, his feet would stick out of the barn door.

Defendant was taken into custody and advised of his *Miranda* rights. He stated that he understood his rights and refused to answer questions about Mrs. Weaver, denying that he knew her. Chief Deputy Johnson noticed that during the questioning defendant did not slur his words. He stated that there was nothing unusual about defendant's eyes nor was there an odor of alcohol about his person. He did not think defendant was under the influence of alcohol or any other narcotic.

Dr. Robert Anthony, a forensic pathologist, performed the autopsy on 10 November 1983. He was not available to testify during the resentencing proceeding; therefore, his testimony from defendant's second trial was read to the jury. He stated that the victim was five feet, one-inch tall and weighed one hundred thirty-one pounds. He found sixteen cut injuries on her head, neck, back, arms, and hands. Several of the wounds were over three-inches long. Two deep cuts went through the skull; the brain and bone in the head were exposed through these cuts. The victim's skull was fractured, which caused fragments of bone to be driven into the brain's surface. A three-inch cut on the left arm opened the elbow joint and entered the bones of the forearm. The cuts were caused by a large, heavy, sharp object, such as a cleaver, ax, or machete. The victim also suffered a blow of some magnitude to the liver.

Dr. Anthony stated that the victim died as a result of loss of blood and the blows to the head which penetrated the brain. He characterized the injuries to the victim's hands and arms as defense wounds, which usually occur when a person is trying to ward off blows. Dr.

Anthony concluded that the vagina was penetrated by a foreign object shortly before the victim died.

An SBI agent testified that blood consistent with that of the victim was found on the hatchet and the sock in the barn, on the defendant's socks and one of his shoes, and on his jeans. Other agents testified that fibers on the hatchet matched those from the victim's pajamas, that hairs removed from the victim's fingernails could have originated from defendant, and that spermatozoa were found on slides made from a vaginal swab.

Defendant presented evidence tending to show that he had sniffed gasoline habitually since he was seven or eight years old. By the time he was fifteen, he would sniff gasoline six to eight hours at a time, three to four times a week. Two of defendant's five siblings and his mother testified about his problems with gasoline. They also stated that defendant's father was an alcoholic and often beat defendant for sniffing gasoline.

Defendant testified that he began sniffing gasoline when he was eight and also began drinking alcohol at that time. When he was nine he began using drugs such as Quaaludes, Valium and marijuana. He sniffed other inhalants, including paint thinner, plastic rubber, wood glue, airplane glue, and lighter fluid. He further testified that he does not regard sniffing inhalants as a problem and that he still uses them in Central Prison. He stated that he had had many jobs but none for more than two and one-half months.

Defendant inhaled gasoline five days a week for eight to twelve hours at a time in the year before the murder. He kept the gasoline in the barn. On the day before the murder, he bought a twelve-pack of beer and drank the contents of eleven and one-half cans and sniffed gasoline. He then went to sleep, awoke once, and then awoke again to find two policemen standing over him. He stated that he was not capable of committing the crimes against Mrs. Weaver. He suggested that the Sheriff's Department might have set him up by putting the victim's blood on his socks. He denied taking a hatchet from Mrs. Weaver's tool shed and killing her with it.

Dr. Anthony Colucci, an expert in pharmacology and toxicology, testified about the effects of gasoline inhalation and alcohol consumption. People who are exposed to gasoline, especially when they are young, begin to manifest mental retardation syndromes because the brain has been eaten away little by little. He stated that consum-

ing eleven and a half beers would render most people physically unable to function. Dr. Colucci had never spoken with or examined defendant.

Dr. John Warren, an expert in psychopharmacology and psychology, testified that he examined defendant for the first time in August 1992 and again in September 1992. He interviewed family members and reviewed prior trial testimony, defendant's 1974 records from Dorothea Dix Hospital, and his school records. He administered an I.Q. test to defendant, which placed his I.Q. in the seventy to eighty range of scores. This score showed borderline mental retardation and cognitive problems. Dr. Warren testified that based on the information he had from the records and the nine hours he spent with defendant, he believed that at the time of the murder defendant's capacity to appreciate the criminality of his conduct was impaired by substance abuse and by his low I.Q.

Defendant and the State stipulated that defendant had been convicted of the first-degree rape of the victim. The jury found as an aggravating circumstance that the murder was committed while defendant was engaged in the commission of a rape, which was the only aggravating circumstance submitted. The trial court submitted four statutory and eleven non-statutory mitigating circumstances. None of the jurors found any of these to exist. The jury then recommended a sentence of death, and the court sentenced defendant in accord with that recommendation.

[1] Defendant assigns as error the trial court's denial of his motion to disclose evidence of prior crimes or bad acts by defendant that the State intended to introduce pursuant to Rule 404(b). Defendant contends that disclosure by the State was necessary to insure basic fairness and reliability in the capital sentencing proceeding because defendant then would have had an adequate chance to rebut allegations of prior crimes or bad acts that were relevant either to aggravating or mitigating circumstances. During cross-examination, defendant repeatedly testified that he did not remember participating in certain crimes. He argues that his inability to refute the allegations was prejudicial.

Rule 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other

purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C.G.S. § 8C-1, Rule 404(b) (1992). This rule addresses the admissibility of evidence; it is not a discovery statute which requires the State to disclose such evidence as it might introduce thereunder. Further, the State did not directly introduce or use evidence of prior crimes or bad acts committed by defendant; rather, it cross-examined defendant about the acts. Finally, the motion did not indicate that a request was made for a copy of defendant's criminal record. Failure to make such a request constitutes a waiver by defendant of his right to discovery of his record under N.C.G.S. § 15A-903(c). *See State v. Jones*, 295 N.C. 345, 358-59, 245 S.E.2d 711, 719 (1978). This assignment of error is overruled.

**[2]** In another assignment of error, defendant argues that the trial court erred by denying his oral motion for permission to question potential jurors regarding their beliefs about parole eligibility. We previously have held that evidence about parole eligibility is not relevant in a capital sentencing proceeding because it does not reveal anything about defendant's character or record or about any circumstances of the offense. *See, e.g., State v. Green*, 336 N.C. 142, 157-58, 443 S.E.2d 14, 23 (1994); *State v. Price*, 326 N.C. 56, 83, 388 S.E.2d 84, 99-100, *sentence vacated on other grounds*, 498 U.S. 802, 112 L. Ed. 2d 7 (1990), *on remand*, 331 N.C. 620, 418 S.E.2d 169 (1992), *sentence vacated on other grounds*, ⸻ U.S. ⸻, 122 L. Ed. 2d 113, *on remand*, 334 N.C. 615, 433 S.E.2d 746 (1993), *sentence vacated on other grounds*, ⸻ U.S. ⸻, 129 L. Ed. 2d 888 (1994); *State v. Robbins*, 319 N.C. 465, 518, 356 S.E.2d 279, 310, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). The United States Supreme Court's recent decision in *Simmons v. South Carolina*, ⸻ U.S. ⸻, 129 L. Ed. 2d 133 (1994), does not affect our prior rulings on this issue. There, the Court ruled that a sentencing jury must be informed that a defendant is parole ineligible when the State argues to the jury for the death penalty based on the premise that the defendant will be dangerous in the future. The Court, however, noted that where a defendant is eligible for parole, "[s]tates reasonably may conclude that truthful information regarding the availability of commutation, pardon, and the like, should be kept from the jury in order to provide 'greater protection in [the States'] criminal justice system than the Federal Constitution requires.' " *Id.* at ⸻, 129 L. Ed. 2d at 145 (quoting *California v. Ramos*, 463 U.S. 992, 1014, 77 L. Ed. 2d 1171, 1189

(1983)); *see also State v. Bacon,* 337 N.C. 66, 97-98, 446 S.E.2d 542, 558-59 (1994). Here, defendant would have been eligible for parole had he been given a life sentence. We continue to adhere to our prior rulings on this issue. This assignment of error is overruled.

[3] In his next assignment of error, defendant argues that the trial court committed reversible error by denying his request that prospective jurors be instructed during preselection about his life sentence for first-degree rape. Defendant was convicted of the murder and first-degree rape of Kathleen Weaver during his second trial in 1988. That jury recommended a sentence of death for the murder; the trial court imposed the death sentence and a life sentence for the collateral crime of first-degree rape. It ordered that the life sentence run consecutively to the sentence for murder. Defendant contends that the trial court's refusal to instruct the venire panel about his sentence for first-degree rape violates jurisprudence addressing the constitutional guarantee that a defendant in a capital case is entitled to present mitigating evidence, specifically *Lockett v. Ohio,* 438 U.S. 586, 57 L. Ed. 2d 973 (1978), and its progeny. Defendant cites *Skipper v. South Carolina,* 476 U.S. 1, 90 L. Ed. 2d 1 (1986), for the proposition that a sentencer in a capital case may "not be precluded from considering, *as a mitigating factor,* any aspect of a defendant's character or record and any circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 4, 90 L. Ed. 2d at 6. His life sentence for first-degree rape is, according to defendant, an aspect of his record that could be a basis for a sentence less than death, and under *Skipper,* he was entitled to present it to the jurors during preselection as mitigating evidence.

The statute governing the information the trial court is to give to prospective jurors provides:

> Prior to selection of jurors, the judge must identify the parties and their counsel and briefly inform the prospective jurors, as to each defendant, of the charge, the date of the alleged offense, the name of any victim alleged in the pleading, the defendant's plea to the charge, and any affirmative defense of which the defendant has given pretrial notice as required by Article 52, Motions Practice. The judge may not read the pleadings to the jury.

N.C.G.S. § 15A-1213 (1988). Nothing in this statute or in the case law requires the court to instruct prospective jurors about sentences a defendant may have received for other offenses, either related or unrelated to the crime for which the jurors ultimately selected will

recommend sentencing. The purpose of the informative statement by the court to the prospective jurors is a limited one. The official commentary to the statute states that "[t]his procedure is designed to orient the prospective jurors as to the case." *Id.*

In response to defendant's request, the trial court stated:

Well, I don't think I'm going to get into that [the first-degree rape life sentence]. I'm going to tell them that's what he was convicted of [first-degree rape] and then the trial we are about: the sentencing on the murder charge. I don't want to broaden this beyond what is necessary.

The trial court properly decided to instruct the prospective jurors only on those matters required by statute. Further, the court's ruling was procedurally prudent given the possibility that no prospective juror would be chosen from the particular venire to serve in the sentencing proceeding. We do not reach the merits of defendant's argument based on *Lockett* and its progeny because defendant never moved to introduce the first-degree rape sentence at any time during the evidentiary phase of the resentencing proceeding; his sole request was for the court to inform *prospective* jurors, none of whom would necessarily in fact serve, of the first-degree rape sentence. We find no error or abuse of discretion in the court's decision, and we overrule this assignment of error.

[4] Defendant next assigns as error the prosecutor's comments during his statement to the prospective jury panel and during his opening statement in which he stressed that the murder was especially heinous, atrocious and cruel. Defendant did not object to these comments, but he contends the court should have intervened *ex mero motu* because the prosecutor acted in bad faith by mentioning this aggravating circumstance. He argues that because the trial court ruled at the second sentencing proceeding that the evidence was not sufficient to submit the aggravating circumstance that the murder was especially heinous, atrocious or cruel, any mention of the circumstance was barred in this, the third, sentencing proceeding. According to defendant, the prosecutor's comments were an attempt to persuade the jury to rely on an ineligible, and therefore arbitrary, aggravating circumstance, which thereby violated the Eighth Amendment, the North Carolina Constitution, and the capital sentencing statute. Defendant cites *State v. Silhan*, 302 N.C. 223, 267-71, 275 S.E.2d 450, 482-83 (1981), as holding that, based on double jeopardy principles, a judicial finding of insufficiency of evidence to support

an aggravating circumstance in one capital sentencing proceeding bars the use of it in a resentencing proceeding in the same case. We disagree with defendant's interpretation of the application of *Silhan* to this case.

In *Silhan* this Court stated:

> If upon defendant's appeal of a death sentence the case is remanded for a new sentencing hearing, double jeopardy prohibitions would not preclude the [S]tate from relying on any aggravating circumstance of which it offered sufficient evidence at the hearing appealed from and which was either not then submitted to the jury or, if submitted, the jury then found it to exist.

*Id.* at 270, 275 S.E.2d at 482. In the first sentencing proceeding the jury found the aggravating circumstance that the murder was especially heinous, atrocious or cruel. In the second and third sentencing proceedings the trial court did not submit the circumstance. In our review of the second sentencing proceeding, we determined in a similar issue that the prosecutor had not engaged in misconduct by stating to the jury that it could consider evidence of an especially heinous, atrocious or cruel murder as an aggravating circumstance in sentencing where the trial court later declined to submit the circumstance. *Payne II*, 328 N.C. at 392, 402 S.E.2d at 590. There we stated that, based on the evidence, the statements were made in good faith because the prosecutor could reasonably interpret the evidence as supporting the circumstance. We did not rule on whether the evidence was sufficient to support the circumstance. *Id.*

Defendant argues that the difference between the issue before us now and the issue before us in his second appeal is that here a judicial determination of insufficiency of the evidence had been made by the trial court in the second sentencing proceeding. The prosecutor therefore had notice that the circumstance was not supported by the evidence, and he thus should not have commented on it to the jury. In *Silhan* we stated that the State may rely "on any aggravating circumstance of which it offered sufficient evidence at the hearing appealed from and which was . . . not submitted to the jury" without violating double jeopardy prohibitions. *Silhan,* 302 N.C. at 270, 275 S.E.2d at 482. Because the trial court determines whether to submit an aggravating circumstance, and must submit a statutory circumstance where the evidence supports its submission—*see* N.C.G.S. § 15A-2000(b) (1988); *State v. Lloyd*, 321 N.C. 301, 311-12, 364 S.E.2d 316, 323, *sentence vacated on other grounds*, 488 U.S. 807, 102

L. Ed. 2d 18, *on remand*, 323 N.C. 622, 407 S.E.2d 277 (1988), *sentence vacated on other grounds*, 494 U.S. 1021, 108 L. Ed. 2d 601 (1990), *on remand*, 329 N.C. 662, 407 S.E.2d 218 (1991)—the implication of our statement was that it is not the trial court's ruling on the submission that determines whether the State is barred from reliance on the circumstance. Clearly we were referring to a judicial determination of insufficiency made by this Court, not the trial court.

At the time of the third sentencing proceeding the prosecutor knew the circumstance had been submitted and found in the first proceeding. He also knew that though the circumstance was not submitted at the second proceeding, on appeal this Court did not address the question of whether the evidence was sufficient to support the circumstance. Following our statement that we did not answer the sufficiency question, we noted that the case was "not so lacking in evidentiary support for this factor that it was impermissible for the prosecutor to forecast reliance on it at the outset of the trial." *Payne II*, 328 N.C. at 392, 402 S.E.2d at 590. We conclude that the prosecutor did not improperly rely on the circumstance given our silence on the question of the sufficiency of the evidence and the fact that a previous jury had found the circumstance to exist. *See Silhan*, 302 N.C. at 270, 275 S.E.2d at 482 (double jeopardy prohibitions not violated where, in a subsequent sentencing proceeding, an aggravating circumstance is submitted that a jury found to exist in a previous proceeding because defendant, in essence, had not been acquitted of the circumstance); *see also Poland v. Arizona*, 476 U.S. 147, 157, 90 L. Ed. 2d 123, 133 (1986) (holding that trial judge's refusal to final aggravating circumstance was not acquittal of that circumstance for double jeopardy purposes). The prosecutor's comments to the prospective jury panel and in his opening statement briefly mentioned the State's intention to rely on the circumstance based on the brutality of the killing. These comments would have had to be " 'glaring or grossly egregious for this Court to determine that the trial court erred in failing to take corrective action *sua sponte*.' " *State v. Brown*, 320 N.C. 179, 200, 358 S.E.2d 1, 16 (quoting *State v. Pinch*, 306 N.C. 1, 18, 292 S.E.2d 203, 218, *cert. denied*, 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *reh'g denied*, 459 U.S. 1189, 74 L. Ed. 2d 1031 (1983), *overruled on other grounds by State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988), *and by State v. Robinson*, 336 N.C. 78, 443 S.E.2d 306 (1994)), *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987). These comments were not grossly improper and did not require *ex mero motu* intervention. After the trial court ruled that it would not

submit the circumstance, the prosecutor did not mention it to the jury again. The prosecutor did not act in bad faith; the *Silhan* principles were not violated.

**[5]** In the same assignment of error, defendant argues that the prosecutor improperly injected the aggravating circumstance into the State's presentation of the evidence by asking witnesses about the victim's defensive and other wounds. Defendant did not object to these questions; thus, review is limited to consideration of whether the testimony constituted plain error. *State v. Gappins*, 320 N.C. 64, 68, 357 S.E.2d 654, 657 (1987). Plain error is such that its presence " 'resulted in a miscarriage of justice or in the denial to appellant of a fair trial.' " *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quoting *United States v. McCaskill*, 676 F.2d 995, 1002 (4th Cir.), *cert. denied*, 459 U.S. 1018, 74 L. Ed. 2d 513 (1982)). The prosecutor did not refer specifically to the circumstance but instead questioned witnesses about the nature of the wounds on the victim's hands. Where a different jury from the one that served in the guilt phase determines punishment, the evidence from the guilt phase "is competent for the jury's consideration in passing on punishment," including evidence as "to any matter that the court deems relevant to sentence." N.C.G.S. § 15A-2000(a)(3) (1988); *see Pinch*, 306 N.C. at 19, 292 S.E.2d at 219. In this case, the jury had to hear evidence concerning the offense in order to consider the aggravating circumstance of whether the capital felony was committed while the defendant was engaged in the commission of a rape. The prosecutor's questions did not refer specifically to the circumstance and were relevant to sentencing. They thus did not constitute plain error. This assignment of error is overruled.

**[6]** Defendant next assigns as error the trial court's overruling of his objections to closing statements made by the prosecutor that, according to defendant, implicitly referred to the danger of defendant's possible release on parole. In his closing argument the prosecutor made the following statements:

> The only way, the only way that we're ever going to be sure that this defendant right here will never do this again is to put him in the gas chamber.

> That is the only way that we'll ever be sure. . . . You've got it in your power to see that he never does it again . . . . And the only way you're going to be sure is to give him the death penalty.

You say to yourself, what can I do to make sure he'll never do it again? And the answer to that is to put him where he belongs for what he did to Kathleen Weaver.

[D]o what you can to make sure Randy Joe Payne does not ever do this again.

Defendant argues that because this Court has ruled that parole eligibility is irrelevant to capital sentencing, the State should be bound by the assumption that a life sentence means life and that defendant will never be released from prison. Defendant contends that the prosecutor's statements suggested to the jury that defendant might be released on parole and were therefore improper. We disagree.

In *State v. Laws*, 325 N.C. 81, 120, 381 S.E.2d 609, 632 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *sentence reinstated*, 328 N.C. 550, 402 S.E.2d 573, *cert. denied*, —— U.S. ——, 116 L. Ed. 2d 174, *reh'g denied*, —— U.S. ——, 116 L. Ed. 2d 648 (1991), this Court held that specific deterrence arguments are permissible during the penalty phase of a capital trial. Further, the prosecutor may argue to the jury that death will have a deterrent effect on defendant personally. *State v. Lee*, 335 N.C. 244, 281-82, 439 S.E.2d 547, 567 (1994); *State v. Gibbs*, 335 N.C. 1, 69, 436 S.E.2d 321, 360 (1993), *cert. denied*, —— U.S. ——, —— L. Ed. 2d —— (1994); *State v. Syriani*, 333 N.C. 350, 397, 428 S.E.2d 118, 144, *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 341 (1993), *reh'g denied*, —— U.S. ——, 126 L. Ed. 2d 707 (1994). Here, the prosecutor never mentioned parole or the consequences of life imprisonment. The prosecutor's argument therefore was not improper. This assignment of error is overruled.

**[7]** Defendant assigns as error the trial court's following statement in its instructions to the jury on the mitigating circumstance of impaired capacity, N.C.G.S. § 15A-2000(f)(6): "You must remember, members of the jury, that generally voluntary intoxication is no excuse for crime." He argues that the court's statement indicated to the jury that evidence must excuse a crime to be mitigating and that voluntary intoxication does not constitute an excuse. Defendant contends that one or more jurors were reasonably likely to interpret impaired capacity as excluding impairment due to voluntary gasoline or alcohol intoxication. The jurors were precluded thereby from considering and giving full effect to the mitigating circumstance. We disagree.

Defendant did not object to the instruction. Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure bars this assignment of

error. Our review therefore is for plain error. *See Odom*, 307 N.C. at 659-61, 300 S.E.2d at 378-79. To constitute plain error, an instructional error must be "so fundamental that it denied the defendant a fair trial and quite probably tilted the scales against him." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993). When reviewing the instruction for error, we must construe it contextually. If the charge, read as a whole, is correct, isolated portions will not be held prejudicial. *See State v. Davis*, 321 N.C. 52, 59, 361 S.E.2d 724, 728 (1987); *State v. Jackson*, 284 N.C. 383, 389, 200 S.E.2d 596, 600 (1973); *State v. Cook*, 263 N.C. 730, 734, 140 S.E.2d 305, 309 (1965).

The trial court explained mitigating circumstances to the jury by stating:

> Now, a mitigating circumstance, members of the jury, is a fact or group of facts which do not constitute a justification or excuse for a killing or reduce it to a lesser degree of crime than first degree murder but which may be considered as extenuating or reducing the moral culpability of the killing or making it less deserving of the extreme punishment than other first-degree murders.
>
> . . . .
>
> [I]t would be your duty to consider as a mitigating circumstance any aspects of the defendant's character or record of the circumstances of this murder that the defendant contends is a basis for a sentence less than death and any other circumstance arising from the evidence which you deem to have mitigating value.

The trial court's complete instruction to the jury on the impaired capacity mitigating circumstance was as follows:

> Members of the jury, . . . you would take up mitigating circumstance B which reads as follows: "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired."
>
> And a person's capacity to appreciate the criminality of his conduct or to conform his conduct to the law is not the same as his ability to know right from wrong generally or to know that what he's doing at a given time is killing or that such killing is wrong. A person may indeed know that killing is wrong and still not appreciate its wrongfulness because he does not fully comprehend or is not fully sensible to what he's doing or how wrong it is.

Further, for this mitigating circumstance to exist, the defendant's capacity to appreciate does not need to have been totally obliterated. It is enough that it was lessened or diminished. Finally, this mitigating circumstance would exist even if the defendant did appreciate the criminality of his conduct if his capacity to conform his conduct to the law was impaired since a person may appreciate that his killing is wrong and still lack the capacity to refrain from doing it.

Again, the defendant need not wholly lack all capacity to conform. It is enough that such capacity as he might otherwise have had in the absence of his impairment is lessened or diminished because of such impairment.

You must remember, members of the jury, that generally voluntary intoxication is no excuse for crime. You would find this mitigating circumstance if you find that the defendant sniffed gas, drank beer, was below intelligence [sic] and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

The court correctly instructed the jury that a mitigating circumstance does not constitute a justification or excuse for killing but may be considered as extenuating or reducing the moral culpability of the murder so that it is less deserving of a death sentence than other first-degree murders. See State v. Boyd, 311 N.C. 408, 421, 319 S.E.2d 189, 198 (1984) (quoting State v. Brown, 306 N.C. 151, 178, 293 S.E.2d 569, 586 (1982)), cert. denied, 471 U.S. 1030, 85 L. Ed. 2d 324 (1985). The court did not state that defendant's burden was to establish by a preponderance of the evidence such facts as would constitute a justification or excuse for the killing. The court's statement that generally voluntary intoxication is not an excuse for crime was immediately followed by the statement that the juror would find the circumstance if he or she found that defendant sniffed gas, drank beer or was of low intelligence so that his capacity to appreciate the criminality of his conduct was impaired. In the context of the whole instruction, the complained-of statement reiterated the court's prior instruction that a finding of a mitigating circumstance is not the equivalent of excusing the crime. In essence the statement assured the jury that it would not be excusing defendant of culpability for the murder if it were to find the mitigating circumstance. The statement thus was to defendant's advantage and did not prejudice the jury's sentencing recommendation.

**[8]** Defendant also assigns as error the trial court's overruling of his objections to certain of the prosecutor's closing statements to the jury because he contends they compounded the effect of the court's statement on impaired capacity that voluntary intoxication is not an excuse for the crime. Alternatively, defendant argues that the court's overruling of his objections was itself reversible error. According to defendant, the prosecutor urged the jury to reject defendant's voluntary gasoline inhalation as mitigating because voluntary intoxication is not an excuse and because the inhalation did not qualify for the excuse of insanity.

In closing the prosecutor stated, "He goes and voluntarily does that, and voluntary intoxication of any kind is no excuse for any crime in this State. If it was, he would have been found not guilty by reason of insanity." Defendant objected, the objection was overruled, and the prosecutor continued:

> You heard what the doctor said. No, he knew right from wrong. All the doctor is saying is that, well, he maybe could not appreciate the criminality of his action. . . . You consider every bit of the evidence. And when you think to yourself has this man suffered some mental or emotional disturbance that would be a mitigating circumstance for this (showing autopsy pictures), for that.

Counsel is afforded wide latitude in closing argument to the jury at sentencing and may argue the law and facts in evidence and all reasonable inferences drawn therefrom. *State v. Artis*, 325 N.C. 278, 323, 384 S.E.2d 470, 496, *sentence vacated on other grounds*, 494 U.S. 1024, 108 L. Ed. 2d 604 (1989), *on remand*, 329 N.C. 679, 406 S.E.2d 827 (1991). We have stated that "prosecutorial statements are not placed in an isolated vacuum on appeal." *Pinch*, 306 N.C. at 24, 292 S.E.2d at 221. Here, in the context of the whole argument, the prosecutor did not improperly urge the jury to reject voluntary gasoline inhalation as mitigating because it does not qualify as an excuse. Rather, the prosecutor's statements to the jury were directed to the weight the jury should give the mitigating circumstance of impaired capacity. The prosecutor noted that the doctor's testimony indicated that defendant's appreciation of the criminality of his actions might have been impaired but that the possible impairment was insignificant in light of the brutal attack. The juror may attach whatever weight, significance, and credibility he or she may choose to defendant's evidence even where the State offers no direct evidence in refutation. *See State v. McKoy*, 323 N.C. 1, 28-29, 372 S.E.2d 12, 26-27

(1988), *rev'd and remanded on other grounds*, 494 U.S. 433, 108 L. Ed. 2d 369, *on remand*, 327 N.C. 31, 394 S.E.2d 426 (1990). We also note that defense counsel emphasized to the jury several times in closing that mitigating circumstances were not justifications or excuses for the crime. In light of the overall circumstances, we conclude that the prosecutor's statements did not compound the effect of the court's statement that voluntary intoxication is not an excuse for crime, nor do these statements alone constitute reversible error. This assignment of error is overruled.

In another assignment of error, defendant disputes the manner in which the trial court instructed the jury on two of the mitigating circumstances submitted to the jury: N.C.G.S. § 15A-2000(f)(2), mental or emotional disturbance, and N.C.G.S. § 15A-2000(f)(6), impaired capacity. None of the jurors found either of these circumstances to exist. He contends as to both circumstances that the court improperly excluded evidence that would have supported the circumstance. He further complains that the court used the conjunctive in listing the potentially supporting evidence, thereby conditioning a finding of the circumstance on a finding of all the listed factors. Defendant did not object to the instructions. We therefore review them for plain error.

[9] The trial court instructed on mental or emotional disturbance as follows:

> The first mitigating circumstance designated as A reads, "The murder was committed while the defendant was under the influence of a mental or emotional disturbance." And you would find this mitigating circumstance if you find that the defendant was suffering from the effects of gasoline sniffing and alcohol consumption and that as a result the defendant was under the influence of mental or emotional disturbance when he killed the victim.

According to defendant, the trial court properly included the effects of substance abuse as a ground for considering mental or emotional disturbance as a mitigating circumstance. He points out, however, that Dr. Warren mentioned defendant's personality disorder and his borderline intellectual functioning as evidence of his mental or emotional disturbance. He therefore contends that the court erred by failing to include personality disorder and borderline intelligence as grounds for considering the circumstance. He suggests that it was also error to condition a finding of the circumstance on findings of both gasoline inhalation and alcohol consumption. We disagree.

In this instruction the trial court did not preclude the jurors from considering other evidence in addition to gasoline sniffing and alcohol consumption. *See State v. Hill*, 331 N.C. 387, 420, 417 S.E.2d 765, 781-82 (1992), *cert. denied*, —— U.S. ——, 122 L. Ed. 2d 684, *reh'g denied*, —— U.S. ——, 123 L. Ed. 2d 503 (1993). Further, the court is not required to summarize all of the evidence in its charge to the jury. N.C.G.S. § 15A-1232 (1988). Neither Dr. Warren nor Dr. Colucci stated that as a result of a borderline I.Q. or a personality disorder, defendant was under the influence of a mental or emotional disturbance at the time he killed Mrs. Weaver. *See Pinch*, 306 N.C. at 28-29, 292 S.E.2d at 224-25.

Further, Dr. Warren and Dr. Colucci stated that one of the effects of defendant's abuse of gasoline was that his I.Q. was lowered. Dr. Warren also stated that defendant showed signs of organicity, such as impaired attention span and impulse control problems, which were the effects of long-term inhalation of gasoline. Dr. Colucci testified that gasoline compounds produce neurological damage, which is manifested in mental retardation symptoms. The instruction therefore accorded with defendant's evidence in that the jury could consider defendant's lower intellectual functioning as one of the effects of his substance abuse.

As to defendant's complaint that the court used the conjunctive in the instruction, Dr. Colucci testified that the effects of gasoline inhalation and alcohol intoxication interact with each other and cause a greater effect than if administered separately. Dr. Warren agreed in his testimony that voluntary alcohol intoxication combined with inhaling gasoline would decrease defendant's judgment and inhibition. Defendant's own evidence linked these two substance abuses; therefore, the instruction in the conjunctive basically accorded with defendant's evidence and was not plain error. *See State v. Johnson*, 317 N.C. 343, 390-92, 346 S.E.2d 596, 622-24 (1986).

[10] The trial court instructed the jury on the impaired capacity circumstance, in pertinent part, as follows:

Members of the jury, . . . you would take up mitigating circumstance B, which reads as follows: "The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired."

. . . .

. . . You would find this mitigating circumstance if you find that defendant sniffed gas, drank beer, was below intelligence [sic] and that this impaired his capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.

Defendant notes that the trial court correctly included defendant's substance abuse and lower intelligence as possible causes of impaired capacity based on Dr. Warren's testimony that defendant's low intelligence and substance abuse impaired his capacity to appreciate the criminality of his conduct at the time of the crime. Defendant points out, however, that Dr. Warren also cited defendant's records from a mental institution from 1984 and 1985 as evidence of impaired capacity. He stated that those records indicated that another doctor diagnosed defendant as suffering from a personality disorder. Defendant therefore argues that the trial court wrongly excluded evidence of his personality disorder as a ground for considering impaired capacity. He also maintains that the trial court erred by conditioning a finding of the circumstance on a finding of all of the listed factors: gasoline inhalation, alcohol consumption, and low intelligence. We disagree.

The trial court did not err by failing to mention defendant's personality disorder as a possible source of impaired capacity. Dr. Warren did testify that defendant had personality disorders, but he did not link these disorders to any impairment in capacity. Dr. Colucci also did not mention the personality disorders as affecting defendant's capacity but rather stated that they were a result of substance abuse. Further, the trial court's instruction did not preclude the jury from considering other evidence. See Hill, 331 N.C. at 420, 417 S.E.2d at 781-82.

Defendant's evidence focused on the combined effects that defendant's gasoline inhalation and alcohol consumption had on his capacity to appreciate the criminality of his conduct and to conform his conduct to the law's requirements. Dr. Warren testified that defendant's ability to understand and control his actions was impaired by his substance abuse problem and further impaired by his low I.Q. Dr. Warren never testified that gasoline inhalation, alcohol consumption, or a low I.Q. alone resulted in impaired capacity. Dr. Colucci also stated that if defendant had been sniffing gasoline and consuming a large quantity of beer before the murder, he would have been compromised physically at the time of the killing. He also testified to the effects that gasoline inhalation had on defendant's I.Q. Defendant's evidence thereby concentrated on the combined effects

of gasoline inhalation, alcohol consumption and lower intelligence. The trial court's instruction in the conjunctive accorded with defendant's evidence and was not plain error. *See Johnson*, 317 N.C. at 390-92, 346 S.E.2d at 622-24. Thus, the instruction on impaired capacity did not constitute plain error.

Assuming *arguendo* that a juror might have heard either of these instructions as precluding the consideration of any evidence, we note that the trial court submitted the "catchall" circumstance found in N.C.G.S. § 15A-2000(f)(9): "Any other circumstances arising from the evidence that the jury deems to have mitigating value." Any such juror could have considered such additional evidence in making his or her determination of the existence of the "catchall" circumstance.

[11] In his next assignment of error, defendant contends that the trial court erred in its instruction to the jury on the mitigating circumstance found in N.C.G.S. § 15A-2000(f)(1), that defendant has no significant history of criminal activity. The court gave the following instruction:

> Now, members of the jury, . . . you would take up and consider . . . mitigating Issue Three which reads as follows: "That the defendant has no significant history of prior criminal activity." Significant, members of the jury, means important or notable. Whether any history of prior criminal activity is significant is for you to determine from all the facts and circumstances which you find from the evidence. However, you should not determine whether it is significant only on the basis of the number of convictions, if any, in the defendant's record.

> Rather, you should consider the nature and quality of the defendant's history, if any, in determining whether it is significant. And as to your determination and consideration on this—as to this particular mitigating circumstance as to significant history of prior criminal activity, you must not consider his convictions in this case, that is, of the first-degree murder and first-degree rape.

> You would find this mitigating circumstance if you find that the defendant has little, if any, prior criminal activity and find that the criminal activity that does exist is not a significant history of prior criminal activity.

The jury did not find that this mitigating circumstance existed. Defendant concedes that the court properly defined "significant," but he maintains that it was error to condition a finding of the circum-

stance on whether defendant has "little, if any," prior criminal activity. Defendant posits that the circumstance could be found to exist even where a defendant has committed several crimes, as long as they are sufficiently minor and therefore not significant. According to defendant, this phrase required the jury to find that defendant had "little, if any," history of prior criminal activity and find that that history was not significant in order to find this mitigating circumstance. We disagree.

Defendant neither objected to the instruction nor asked for a clarifying instruction. He thus is entitled to relief only if plain error occurred. *See Gibbs*, 335 N.C. at 57-58, 436 S.E.2d at 321. To constitute plain error, an error in the trial court's instructions must be a " '*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done.' " *Odom*, 307 N.C. at 660, 300 S.E.2d at 378 (quoting *McCaskill*, 676 F.2d at 1002).

The court's instruction correctly informed the jury that in determining the significance of defendant's criminal history it should consider the nature and quality of defendant's activity rather than focus solely on the number of convictions. *See Lloyd*, 321 N.C. at 311-13, 364 S.E.2d at 323-24. In its explanation of what is significant, the court did not imply that the jury had to find "little, if any," criminal history to find the existence of the circumstance; rather, the instruction emphasized to the jury that the nature and quality of the criminal activity was the determinative factor.

Further, little evidence of defendant's history of criminal activity was presented. Defendant testified that he had broken into a few places and that "the only thing I was breaking into was coin-operating machines." He also testified that he was driving a car when two other individuals committed a breaking and entering. No evidence was presented of prior convictions. Defendant either failed to remember or denied involvement in other criminal events when questioned about them by the prosecutor. There thus was little evidence of any history of prior acts or convictions before the jury. The court instructed the jury that it was the quality, not the number of acts, that determined significance. A reasonable juror thus was unlikely to have found that defendant had a significant number of prior acts or convictions and rejected this mitigating circumstance on that basis alone. Finally, the phrase was in the form of "would find," which suggests a possibility, rather than "must find," which would operate as a condition to making the finding. We conclude that in the context of the overall instruc-

tion the phrase, "little, if any," did not constitute plain error. This assignment of error is overruled.

Defendant next argues that the trial court erred in its instructions on defendant's burden of proof for mitigating circumstances. Defendant did not preserve this issue for review because he failed to include it in those assignments of error listed in the record on appeal. Our review is limited to those issues so presented by Rule 10(a) of the North Carolina Rules of Appellate Procedure. However, because of the gravity of this crime and its attendant punishment, we will exercise our discretion and review this issue.

The court gave the following instruction:

The defendant has the burden of persuading you that a given mitigating circumstance exists. The existence of any mitigating circumstance must be established by a preponderance of the evidence, that is, the evidence taken as a whole must satisfy you beyond a reasonable doubt. Excuse me. That is, the evidence taken as a whole must satisfy you not beyond a reasonable doubt. I should have said not beyond a reasonable doubt but simply satisfy you that any mitigating circumstance exists.

If the evidence satisfies any of you that a mitigating circumstance exists, you would indicate that finding on the Issues and Recommendation form. A juror may find that any mitigating circumstance exists by a preponderance of the evidence, whether or not that circumstance was found to exist by all of the jurors.

Defendant contends that the court's use of the words "satisfy you" was reversible error. Defendant also suggests that the court should have defined "preponderance" as "more likely than not." He posits that the instruction created a "standardless standard" for the jury to apply in determining the existence of a mitigating circumstance, thereby violating the Eighth Amendment's requirement of guided discretion and N.C.G.S. § 15A-2000(d)(2). Defendant did not object to the instruction or request a clarifying instruction but argues that the instruction was plain error. We disagree.

The trial court correctly instructed that the defendant's burden of establishing that a mitigating circumstance exists is by the preponderance of the evidence and that that standard requires less proof than proof beyond a reasonable doubt. We have held that by a "preponderance of the evidence" is the correct burden of proof for establishing the existence of mitigating circumstances. *See, e.g., State v.*

*Moore,* 335 N.C. 567, 610, 440 S.E.2d 797, 821-22 (1994); *Price,* 326 N.C. at 94, 388 S.E.2d at 106; *State v. Holden,* 321 N.C. 125, 158, 362 S.E.2d 513, 534 (1987), *cert. denied,* 486 U.S. 1061, 100 L. Ed. 2d 935 (1988); *see also Brown,* 320 N.C. at 207, 358 S.E.2d at 20 (approving instruction similar to the one at issue). There was no plain error in the court's failing to define "preponderance of the evidence" of its own accord.

Nor is there plain error in the court's explanation that "preponderance of the evidence" requires that the juror must be satisfied that the circumstance exists. We have held consistently that "[i]t is the responsibility of the defendant to go forward with evidence that tends to show the existence of a given mitigating circumstance and to prove its existence to the satisfaction of the jury." *State v. Hutchins,* 303 N.C. 321, 356, 279 S.E.2d 788, 809 (1981); *see also Green,* 336 N.C. at 185, 443 S.E.2d at 39; *Brown,* 306 N.C. at 178, 293 S.E.2d at 586-87. The use of the term "satisfy" did not create a "standardless standard."

We have examined similar arguments and rejected them: In *State v. Weeks,* 322 N.C. 152, 367 S.E.2d 895 (1988), the defendant argued that the trial court erred by refusing to define "satisfaction" in its instruction to the jury on the defendant's burden of proof for his insanity defense. The defendant there contended that the term gave unbridled discretion to the jury. We found no error in the instruction and stated, "from its own determination and from the trial court's instructions, a jury knows what satisfies it, and a 'jury is presumed to have understood the plain English contained' in the trial court's instruction." *Id.* at 175, 367 S.E.2d at 909 (quoting *State v. Franks,* 300 N.C. 1, 18, 265 S.E.2d 177, 187 (1980)).

In *State v. Hankerson,* 288 N.C. 632, 220 S.E.2d 575 (1975), *rev'd on other grounds,* 432 U.S. 233, 53 L. Ed. 2d 306 (1977), we analyzed an instruction in a homicide case that informed the jury that the defendant could rebut the presumption of malice by proving to the satisfaction of the jury that he killed in the heat of passion or self-defense. There, we stated, "Satisfying the jury . . . means, we believe, a standard no greater and at the same time one not significantly less than persuasion by a preponderance of the evidence." *Id.* at 648, 220 S.E.2d at 587; *see also State v. Freeman,* 275 N.C. 662, 665-66, 170 S.E.2d 461, 463-64 (1969) (construing "to the satisfaction of the jury" to require as little as "proof by the greater weight of the evidence—a bare preponderance of the proof" and stating that "the jury alone determines by what evidence it is satisfied"); *State v. Prince,* 223 N.C.

392, 393-94, 26 S.E.2d 875, 876 (1943) (jury alone is judge of what satisfies it).

Here, the trial court's use of the word "satisfy" did not increase defendant's burden of proof. We continue to adhere to our view that "satisfies" denotes a burden of proof consistent with a preponderance of the evidence. It is for the jury to determine what evidence satisfies it, and the jury is presumed to have understood the term "satisfy," which is plain English. We have stated previously that "[i]t is well settled that it is not error for the court to fail to define and explain words of common usage in the absence of a request for special instructions." *State v. Jones*, 300 N.C. 363, 365, 266 S.E.2d 586, 587 (1980) (no error in court's failure to define "intent" because the word is self-explanatory). Defendant's argument is meritless. This assignment of error is overruled.

**[13]** Defendant next argues that the court erred when it instructed the jury that it could consider non-statutory mitigating circumstances if it found that such circumstances existed and that such circumstances had mitigating value. Defendant contends that the instruction allowed the jury to decide that a non-statutory circumstance existed but that it had no mitigating value. According to defendant, *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978) is violated by this instruction because there the Court held that "the sentencer . . . [may] not be precluded from considering *as a mitigating factor*" any aspect of defendant's character or record or the circumstances of the offense which the defendant offers as a basis for a sentence less than death. *Id.* at 604, 57 L. Ed. 2d at 990. We consistently have decided this issue against defendant's position. *See, e.g., Lee*, 335 N.C. at 292, 439 S.E.2d at 572; *State v. Fullwood*, 323 N.C. 371, 395-97, 373 S.E.2d 518, 533 (1988), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 602 (1990), *on remand*, 329 N.C. 233, 404 S.E.2d 842 (1991); *State v. Huff*, 325 N.C. 1, 60-61, 381 S.E.2d 635, 669 (1989), *sentence vacated on other grounds*, 497 U.S. 1021, 111 L. Ed. 2d 777 (1990), *on remand*, 328 N.C. 532, 402 S.E.2d 577 (1991). Non-statutory mitigating circumstances "do not have mitigating value as a matter of law." *Lee*, 335 N.C. at 292, 439 S.E.2d at 572. It is the juror's province to determine whether such a circumstance has mitigating value if the juror determines that the circumstance exists. The jurors in this case were not precluded from considering evidence offered by defendant as mitigating. *Lockett* and its progeny therefore were not violated. Defendant's arguments fail to persuade us to change our prior rulings on this issue. This assignment of error is overruled.

**[14]** Defendant next assigns as error the rejection by all jurors of the statutory mitigating circumstances found in N.C.G.S. § 15A-2000(f)(2), that defendant committed the murder while under the influence of a mental or emotional disturbance, and N.C.G.S. § 15A-2000(f)(6), that the capacity of defendant to appreciate the criminality of his conduct or to conform his conduct to the law was impaired. Defendant did not request a peremptory instruction on either of these circumstances. He believes, however, that the evidence supporting them was uncontroverted; therefore, the rejection of these circumstances allowed the jury to exercise discretionary power to disregard proven mitigating circumstances and was arbitrary and unconstitutional. *See State v. Kirkley*, 308 N.C. 196, 219-20, 302 S.E.2d 144, 158 (1983), *overruled on other grounds by State v. Shank*, 322 N.C. 243, 367 S.E.2d 639 (1988). Defendant bases his argument on the Eighth Amendment to the United States Constitution and on the prohibition against arbitrary capital sentencing decisions found in N.C.G.S. § 15A-2000(d)(2).

In support of his argument that the evidence supporting the mitigating circumstances was uncontroverted, defendant points to the testimony of Drs. Colucci and Warren, who discussed the chronic effects of defendant's substance abuse. Lay witnesses, including defendant's family members and defendant himself, testified about defendant's chronic gasoline inhalation and alcohol consumption. Defendant also notes that the prosecutor stated in his closing argument that "sniffing gas is bad for you."

We disagree with defendant's interpretation of the evidence. A reasonable juror could have concluded that neither of the mitigating circumstances existed. The evidence was neither uncontroverted nor indisputably credible. Dr. Colucci testified to the effects produced by sniffing gasoline. He responded to a hypothetical question by stating that should the jury find that defendant had sniffed gasoline in the twenty-four hours prior to the murder and had consumed eleven and one-half beers, defendant probably would have been unconscious. Dr. Colucci also stated that he had never spoken with defendant and had spoken with his family members for the first time on the morning of his testimony. He further testified that he obtained some of defendant's history from Dr. Warren and that if such information were incorrect, his opinion would be worthless. A reasonable juror could have concluded that his testimony was not inherently credible.

Dr. Warren testified that he first examined defendant almost nine years after the murder. Based on his evaluation, he concluded that

defendant was in the borderline range for mental functioning and was continuing to inhale substances. He believed defendant had these problems at the time of the murder and that his capacity to appreciate the criminality of his conduct was impaired by substance abuse and a low I.Q. Further, if defendant was abusing alcohol and gasoline at the time of the murder, his capacity to conform his actions to the law was impaired.

On cross-examination, however, Dr. Warren admitted that in January 1985 a forensic psychiatrist evaluated defendant and found him pleasant, alert, and cooperative; oriented as to person, place, and time, with no looseness of association; functioning intellectually in the low-normal range; and making judgments within normal limits. He also testified that at the time of the 1985 evaluation, defendant showed no signs of organic brain damage.

Lay evidence conflicted with the doctors' direct testimony. Leonard testified that she saw defendant running out of the victim's house and also observed him when he was brought down from the loft. She described him as appearing to be a "very bright person" and "bright-minded," not "staggery." She stated that she had seen defendant on numerous occasions but had only seen him a few times staggering as if he were under the influence of a substance. A veterinarian who also observed defendant when he was brought down from the loft described him as appearing as "fine and as normal-looking as can be." A deputy sheriff who was present when defendant was taken into custody stated that defendant appeared to be normal, was not slurring his words, did not smell of alcohol, and seemed to understand when he was advised of his rights.

Contrary to defendant's assertion, then, the evidence presented as to mitigating circumstances (f)(2) and (f)(6) thus was controverted. Further, a reasonable juror could have found the testimony of the experts not to be inherently credible. We conclude that the failure of the jurors to find either circumstance to exist was not arbitrary and therefore did not violate either the Eighth Amendment or N.C.G.S. § 15A-2000(d)(2). This assignment of error is overruled.

In defendant's final assignment of error, he argues that the death penalty statute, N.C.G.S. § 15A-2000, violates both the United States Constitution and the North Carolina Constitution because death is a cruel and unusual punishment and because the statute is overbroad and unduly vague. We continue to uphold our prior rulings on this issue and overrule this assignment of error. *See Fullwood,* 323 N.C. at

400, 373 S.E.2d at 535; *State v. Barfield*, 298 N.C. 306, 259 S.E.2d 510 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980).

PROPORTIONALITY REVIEW

Because we have found no error in the sentencing phase and in *Payne II* found no error in the guilt phase, we are required to review the record to determine: (1) whether the record supports the jury's finding of the aggravating circumstance upon which the sentencing court based its sentence of death; (2) whether the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether the sentence of death is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2) (1988).

[15] The jury found as an aggravating circumstance that the murder was committed while defendant was engaged in the commission of a rape, N.C.G.S. § 15A-2000(e)(5) (1988). We hold that the evidence fully supports the aggravating circumstance and note that defendant and the State stipulated that defendant had been convicted of the first-degree rape. Nothing in the record suggests that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor. We thus turn to our final statutory duty of proportionality review and "determine whether the death sentence in this case is excessive or disproportionate to the penalty imposed in similar cases, considering the crime and the defendant." *State v. Brown*, 315 N.C. 40, 70, 337 S.E.2d 808, 829 (1985), *cert. denied*, 476 U.S. 1165, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988). We use the "pool" of similar cases as defined in *State v. Williams*, 308 N.C. 47, 301 S.E.2d 335, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177, and *Bacon*, 337 N.C. at 104-07, 446 S.E.2d at 562-64 (1994). We consider those cases "roughly similar with regard to the crime and the defendant." *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985). After making the comparison between those cases and this case, we determine whether juries

> have consistently been returning death sentences in the similar cases, [and if so] then we will have a strong basis for concluding that a death sentence in the case under review is not excessive or disproportionate. On the other hand if we find that juries have consistently been returning life sentences in the similar cases, we

will have a strong basis for concluding that a death sentence in the case under review is excessive or disproportionate.

*Id.*

At the guilt phase of his second trial, defendant was found guilty of first-degree murder under the felony murder rule and on the basis of malice, premeditation and deliberation. At this resentencing proceeding, the jury found as an aggravating circumstance that the murder was committed while defendant was engaged in the commission of a rape, which was the only aggravating circumstance submitted. The trial court submitted four statutory mitigating circumstances: that defendant was under the influence of a mental or emotional disturbance at the time of the murder, that defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, that defendant had no significant history of prior criminal activity, and the "catchall" circumstance. None of the jurors found any of these to exist. The trial court also submitted eleven non-statutory mitigating circumstances. None of the jurors found any of these to exist. The jury then recommended a sentence of death.

Distinguishing characteristics of this crime include the brutality of the attack on the victim, which consisted of sixteen hatchet strikes to her head, neck, back, arms, and hands, the rape of the victim, which occurred prior to her death, and the location of the murder, which was the victim's home. *See Brown*, 320 N.C. at 231, 358 S.E.2d at 34 (a murder in the home "shocks the conscience, not only because a life was senselessly taken, but because it was taken by the surreptitious invasion of an especially private place, one in which a person has a right to feel secure"). Further, it is significant that defendant was found guilty of murder based on both the felony murder rule and on malice, premeditation and deliberation. Also important to our review is the complete lack of mitigating circumstances found by the jury and the sole aggravating circumstance found, that the murder was committed during the commission of a rape.

This case is distinguishable from the seven cases in which this Court has found the death penalty disproportionate. We have never found a death sentence disproportionate in a case involving a victim of first-degree murder who also was sexually assaulted. *Lee*, 335 N.C. at 294, 439 S.E.2d at 574.

In *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988), the jury found one aggravating circumstance, that of pecuniary gain, and sev-

eral mitigating circumstances, including that the defendant had no significant history of prior criminal activity and that the defendant was under the influence of mental or emotional disturbance. Here, the jury found the aggravating circumstance that the murder was committed during the commission of a rape, and no mitigating circumstances. The murder in this case was much more brutal than the murder in *Benson*. The defendant there shot his victim in the legs, which tended to show that his intent was robbery, not murder. Here, by contrast, defendant brutally killed his victim with a hatchet and had raped her while she was still alive. In *Benson* the defendant was convicted only under the felony murder rule, and there was little evidence of premeditation and deliberation. Here, defendant was convicted both on a premeditation and deliberation theory and under the felony murder rule. We have stated that "[t]he finding of premeditation and deliberation indicates a more cold-blooded and calculated crime." *Artis*, 325 N.C. at 341, 384 S.E.2d at 506.

In *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987), the defendant was seventeen years old at the time of the crime. Here, defendant was twenty-eight. In *Stokes* the defendant's older co-participant received a life sentence, and there was no evidence tending to show who led the robbery. Again, the defendant there was convicted only under the felony murder rule.

In *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988), the defendant shot the victim while attempting to shoot another person with whom he previously had argued. Here, defendant broke into the victim's home and brutally killed her without provocation.

In *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985), the defendant and two other men entered the victim's home and robbed and murdered him. The defendant and one of the other men stabbed the victim. The jury found two aggravating circumstances: pecuniary gain and that the murder was committed during the course of a robbery or burglary. The jury "found evidence of one or more mitigating circumstances," *id.* at 674, 325 S.E.2d at 185, but did not specify the mitigating circumstance(s) it found, *id.* at 690, 325 S.E.2d at 194. Here, the jury found no mitigating circumstances. The defendant in *Young* was nineteen years old at the time of the crime. Here, defendant was twenty-eight. The victim in *Young* was not sexually assaulted and

died soon after being stabbed. Here, the victim died while or after being raped by defendant.

In *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984), the defendant shot and killed a police officer. There was no clear evidence of how the crime occurred or what defendant was doing when he encountered the officer. The shooting resulted in a quick death. Here, the victim died after a vicious sexual attack and repeated blows by defendant.

In *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983), the defendant shot the victim while they were in a car. He then told the driver to go to the hospital, and the defendant went into the hospital to get treatment for the victim. Defendant here did nothing to save the victim. He simply went into the barn and fell asleep. He expressed no remorse.

In *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983), the victim was shot twice in the head after he gave the defendant a ride. There was no evidence of a brutal and prolonged attack as there was here.

Our review of the cases involving a sexual assault murder in which the jury has recommended a life sentence reveals that the case before us is distinguishable when compared with a majority of those cases. In three of those cases, *State v. Fincher*, 309 N.C. 1, 305 S.E.2d 685 (1983); *State v. Franklin*, 308 N.C. 682, 304 S.E.2d 579 (1983), *overruled on other grounds by State v. Parker*, 315 N.C. 222, 337 S.E.2d 487 (1985); and *State v. Powell*, 299 N.C. 95, 261 S.E.2d 114 (1980), the sole basis for the conviction was felony murder. Here, defendant was convicted based on murder by malice, premeditation and deliberation and under the felony murder rule. In *State v. Prevette*, 317 N.C. 148, 345 S.E.2d 159 (1986), the jury rejected the submitted aggravating circumstance that the murder was especially heinous, atrocious or cruel. Here, though the circumstance was not submitted, the evidence tended to show that this murder was quite brutal, involving sixteen hatchet wounds to the head, neck, back, arms, and hands.

In both *State v. Temple*, 302 N.C. 1, 273 S.E.2d 273 (1981), and *State v. Clark*, 301 N.C. 176, 270 S.E.2d 425 (1980), there was strong mitigating evidence, which was not the case here. In *Temple* the jury found that the murder was especially heinous, atrocious or cruel and found the mitigating circumstances of no significant history of prior criminal activity, defendant's age at the time of the crime, and other

non-specified circumstances. The defendant was eighteen years old at the time of the crime. Defendant here was twenty-eight. Further, the jury in this case found no mitigating circumstances. In *Clark* the evidence was strong that the defendant suffered from schizophrenia. Here, neither of defendant's experts testified that he suffered from a serious mental illness or disorder at the time of the murder.

In *State v. Richardson*, 328 N.C. 505, 402 S.E.2d 401 (1991), the defendant was found guilty of common law robbery, first-degree rape, and first-degree murder under the felony murder rule and based on premeditation and deliberation. The jury found the aggravating circumstances of pecuniary gain and that the murder was committed during the course of a rape. The jury further found no mitigating circumstances, but recommended life imprisonment. The defendant received two consecutive life sentences for the murder and rape and a ten-year consecutive term for the robbery. While *Richardson* is not readily distinguishable from the case before us, we cannot conclude based on this single case that juries consistently return life sentences in cases like defendant's. *See Green*, 336 N.C. at 198, 443 S.E.2d at 47 ("[T]he fact that in one or more cases factually similar to the one under review a jury or juries have recommended life imprisonment is not determinative, standing alone, on the issue of whether the death penalty is disproportionate in the case under review."). Defendant's case is more comparable to those cases in which the jury recommended the death sentence.

Our review is not limited to a matching of aggravating and mitigating circumstances in this case with those of the cases in the pool. Rather, our goal is to consider "the individual defendant and the nature of the crime or crimes which he has committed," *Pinch*, 306 N.C. at 36, 292 S.E.2d at 229, in light of those cases which are comparable to the one before us. We have found several such comparable cases in which the death sentence was affirmed: *State v. Syriani*, 333 N.C. 350, 428 S.E.2d 118 (1993), *cert. denied*, —— U.S. ——, 126 L. Ed. 2d 707 (1994), *reh'g denied*, —— U.S. ——, 126 L. Ed. 2d 707 (1994); *State v. McDougall*, 308 N.C. 1, 301 S.E.2d 308, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 173 (1983); *State v. Huffstetler*, 312 N.C. 92, 322 S.E.2d 110, *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985).

In *Syriani* the defendant killed his estranged wife by stabbing her twenty-eight times. *Syriani*, 333 N.C. at 359, 428 S.E.2d at 121-22. He then drove to a fire station to seek medical attention for himself. *Id.* at 364, 428 S.E.2d at 124. The jury found the sole aggravating cir-

**STATE v. PAYNE**

[337 N.C. 505 (1994)]

cumstance that the murder was especially heinous, atrocious, or cruel. It found eight mitigating circumstances, among them that defendant was under the influence of mental or emotional disturbance at the time of the murder; that he understood the severity of his conduct; and that he had a history of good work habits. This Court ruled that the death sentence was not disproportionate given the brutality of the murder, the defendant's lack of remorse, and his actions following the crime.

Though the aggravating circumstance of "especially heinous, atrocious or cruel" was not submitted to the jury in the case before us, the crime was of similar, if not greater, brutality to that in *Syriani*, given that the victim here suffered through a rape by defendant before she died. Further, defendant here also failed to show remorse. Like the actions of the defendant there, defendant's actions following the crime were self-oriented: he returned to the barn, changed his clothes, and slept. Finally, the jury in the case before us found no mitigating circumstances, specifically rejecting a circumstance found in *Syriani*, that of mental or emotional disturbance.

In *McDougall* the defendant injected cocaine and then gained entry into the victim's home by guile. He cut and stabbed the victim to death by twenty-two blows with a butcher knife. *McDougall*, 308 N.C. at 7, 301 S.E.2d at 312-13. The evidence also was substantial that he attempted to rape her while he killed her. The jury found the sole aggravating circumstance that the murder was part of a course of conduct. It found in mitigation that the defendant was under the influence of mental or emotional disturbance and that his capacity to appreciate the criminality of his conduct was impaired. We affirmed the death sentence.

In this case, defendant sniffed gasoline and drank beer and then broke into the victim's home. He cut the victim to death with sixteen blows from a hatchet and raped her as he killed her. The jury, like the *McDougall* jury, found a single aggravating circumstance but rejected both mitigating circumstances found in *McDougall*. The similarities between the two crimes are strong, and the jury's failure here to find any mitigating circumstances suggests that this crime was even more deserving of the death penalty.

In *Huffstetler* the defendant beat his sixty-five year-old mother-in-law with a cast iron skillet after an argument. She had wounds on her head, neck and shoulders. Many of her bones, including her spine, were fractured. Following the murder, the defendant went home to

change his bloody clothes, returned to the scene to retrieve the skillet, and then went to visit a friend. *Huffstetler*, 312 N.C. at 98-100, 322 S.E.2d at 115-16. The jury found the sole aggravating circumstance that the murder was especially heinous, atrocious or cruel. In mitigation it found three circumstances: that defendant's capacity to conform his conduct to the requirements of the law was impaired, that the murder occurred after an argument and through the use of an instrument found by the defendant at the scene, and that the defendant did not have a history of violent conduct. This Court affirmed the death sentence on the basis of the brutality of the killing, the lack of remorse by the defendant, and the defendant's cool actions after the killing.

Here, the jury similarly found a single aggravating circumstance but found no mitigating circumstances and specifically rejected the impaired capacity circumstance found by the *Huffstetler* jury. Again, though the "especially heinous, atrocious or cruel" circumstance was not submitted, this murder was particularly brutal and its nature was similar to that in *Huffstetler*, involving cuts to the head, neck, back, arms, and hands. Defendant here also showed no remorse, and his actions following the murder, including his hiding of the hatchet and the sock, changing of his clothes, and falling asleep, were similarly cool and calculated.

We find that *Syriani, McDougall*, and *Huffstetler* are the cases in the pool most comparable to this case. In light of all the cases discussed, we cannot conclude that the death sentence in this case was excessive or disproportionate, considering both the crime and the defendant.

We hold that defendant received a fair sentencing proceeding, free of prejudicial error. In comparing this case to similar cases in which the death penalty was imposed, and in considering both the crime and the defendant, we cannot hold as a matter of law that the death penalty was disproportionate or excessive. *Robbins*, 319 N.C. at 529, 356 S.E.2d at 317.

NO ERROR.