STATE OF NORTH CAROLINA v. RICKY LEE PRICE

No. 585A87

(Filed 6 October 1994)

**Criminal Law §§ 458, 1363 (NCI4th)— capital sentencing— effect of Virginia life sentence—jury argument about parole—not mitigating circumstance**

Since defendant would have been eligible for parole had he been sentenced to life imprisonment in North Carolina and that life sentence made to commence at the expiration of a life sentence defendant had received in Virginia, the decision of *Simmons v. South Carolina*, 512 U.S. ——, 129 L. Ed. 2d 133 (1994), was inapplicable in this capital sentencing proceeding even though the State did argue defendant's future dangerousness as a reason for imposing the death penalty. Therefore, the trial court did not err under *Simmons* by (1) refusing to permit defense counsel to argue to the jury anything about parole; (2) refusing to permit defense counsel to argue that the trial court could require a life sentence imposed in the present case to commence at the end of the Virginia life sentence; and (3) refusing to submit to the jury defendant's Virginia life sentence as a nonstatutory mitigating circumstance.

**Am Jur 2d, Criminal Law §§ 598, 599; Trial §§ 575, 576.**

On remand from the Supreme Court of the United States. Determined on supplemental briefs without further argument.

*Michael F. Easley, Attorney General, by Barry S. McNeill, Special Deputy Attorney General, for the State.*

*Malcolm R. Hunter, Jr., Appellate Defender, by Gordon Widenhouse, Assistant Appellate Defender, for defendant-appellant.*

EXUM, Chief Justice.

Defendant was convicted of first-degree murder of Brenda Smith and sentenced to death at the 8 September 1987 Criminal Session of Superior Court, Person County. This Court concluded defendant's conviction of first-degree murder and his sentence of death were without error and held the sentence of death not to be disproportion-

STATE v. PRICE

[337 N.C. 756 (1994)]

ate. *State v. Price,* 326 N.C. 56, 388 S.E.2d 84 (1990) *(Price I).* Thereafter the United States Supreme Court vacated the judgment and remanded the case to us for further proceedings in light of *McKoy v. North Carolina,* 494 U.S. 433, 108 L. Ed. 2d 369 (1990). *Price v. North Carolina,* 498 U.S. 802, 112 L. Ed. 2d 7 (1990). This Court reaffirmed the conviction and judgment in *State v. Price,* 331 N.C. 620, 418 S.E.2d 169 (1992) *(Price II).* The United States Supreme Court again vacated judgment and remanded the case to this Court for further proceedings in light of *Morgan v. Illinois,* 504 U.S. ——, 119 L. Ed. 2d 492 (1992). On remand this Court affirmed the conviction and sentence of death. *State v. Price,* 334 N.C. 615, 433 S.E.2d 746 (1993) *(Price III).*

This case is now before us again by order of the United States Supreme Court, which vacated our most recent judgment and remanded this case to us for further proceedings in light of *Simmons v. South Carolina,* 512 U.S. ——, 129 L. Ed. 2d 133 (1994). *Price v. North Carolina,* —— U.S. ——, —— L. Ed. 2d ——, 62 USLW 3870 (30 June 1994).

The facts are summarized in *Price I* and will not be restated here except as necessary for proper treatment of the issue to be addressed.

In *Simmons,* the United States Supreme Court held that in a capital sentencing proceeding in which the prosecution relies on defendant's future dangerousness as a reason to impose the death sentence, it is violative of due process to deny defendant's request for a jury instruction that under state law defendant if sentenced to life imprisonment would not be eligible for parole. —— U.S. at ——, 129 L. Ed. 2d at 147.

The question before us is whether defendant should be given a new sentencing hearing in light of the United States Supreme Court's *Simmons* decision. After thoroughly reviewing again the record, briefs and transcript insofar as they pertain to this question, we conclude defendant's conviction and sentence of death should be affirmed.

I.

At defendant's sentencing proceeding two aggravating circumstances were submitted: Defendant had been convicted of a prior felony involving the use of violence to the person. N.C.G.S. § 15A-2000(e)(3) (1988). The murder of Brenda Smith was part of a

course of conduct that included the commission of other crimes of violence. N.C.G.S. § 15A-2000(e)(11) (1988). To support the prior violent felony aggravating circumstance, the State offered in evidence a Virginia judgment showing defendant had been previously convicted in Virginia of the murder of Joan Brady, for which he received a life sentence.

During the sentencing proceeding the trial court made several rulings which bear on the issue before us. It ruled defense counsel could not argue "anything concerning the possibility of parole, the possibility of executive clemency, the possibility of any other governmental agency taking steps in connection with the sentencing proceeding." The State requested defense counsel not be permitted to argue that defendant "will or may spend the rest of his life in prison providing necessary prevention." Defense counsel inquired whether he could make reference to defendant's Virginia sentence of life imprisonment. The trial court ruled defense counsel could "not mislead the jury as to the effect of a life sentence" but could "argue to the jury that the defendant has received a life sentence in Virginia." Defense counsel then tendered his argument "that the Court has it within its power and discretion to impose a life sentence which would run at the end of the life sentence which the defendant is serving in the State of Virginia." The trial court ruled counsel "may not argue that to the jury." Defense counsel also requested the trial court to submit the following as a non-statutory mitigating circumstance: "The fact that defendant has received a life sentence and the fact that this judge may impose [an] additional life sentence to commence at the expiration of the previous life sentence provides additional protection to society." Upon objection by the State, this request was denied; and requested circumstance was not submitted.

During the sentencing proceeding's closing arguments, the State argued to the jury that defendant was dangerous, saying, among other things, "both Doctor Centor and Doctor Rose agree that the defendant is dangerous and is dangerous to others"; defendant "is a dangerous man"; "[t]he defendant is dangerous."[1] Both the State and

---

1. The contexts in which the prosecutor argued defendant's dangerousness were as follows:

"Also, remember, ladies and gentlemen, when you are deciding whether any of these mental illnesses or emotional disturbances impair his capacity to conform to the law, that both Doctor Centor and Doctor Rose agree that the defendant is dangerous and is dangerous to others."

"Just like the other day when I said to Mr. Price on the stand, you hurt some guards when you tried to escape from Danville City Jail, didn't you? 'Well, that's putting

defendant noted in their jury arguments that defendant had received a life sentence in Virginia for the murder of Joan Brady. Defendant's counsel argued, "I'm not asking you to forgive him. I'm not asking that for a minute. He's already serving a life sentence."

In *Price I*, one of defendant's assignments of error was the trial court's prohibiting his counsel from arguing "anything concerning the possibility of parole." He also contended that the trial court erred in disallowing his proffered argument that the trial court could require a life sentence imposed in the present case to commence at the end of the life sentence defendant was presently serving in Virginia. This Court rejected defendant's contention on appeal that these jury arguments should have been permitted. We said:

> While it is generally true that counsel's argument should not be impaired without good reason, *Watson v. White*, 309 N.C. 498, 507, 308 S.E.2d 268, 274 (1983), one "good reason" to limit argument is its irrelevance. "[C]ounsel [may not] argue principles of law not relevant to the case." *State v. Monk*, 286 N.C. 509, 515, 212 S.E.2d 125, 131 (1975). This Court has noted many times that a criminal defendant's status under the parole laws is irrelevant to a determination of his sentence and that it cannot be considered by the jury during sentencing. *E.g.*, *State v. Robbins*, 319 N.C. at 518, 356 S.E.2d at 310. That this holding passes muster under the United States Constitution is implicit in the United States Supreme Court's recognition that "[m]any state courts have held it improper for the jury to consider or to be informed—through argument or instruction—of the possibility of commutation, pardon or parole." *California v. Ramos*, 463 U.S. 992, 1013 n.30, 77 L. Ed. 2d 1171, 1188 n.30 (1983) (quoted in *Robbins*, 319 N.C. at 520, 356 S.E.2d at 311). In other words, the Constitution permits such argument or instruction, but it is not constitutionally required. *Robbins*, 319 N.C. at 519, 356 S.E.2d at 311.

it mildly. I put eight of them in the hospital.' As Doctor Rose says, he is a dangerous man."

"You weren't able to protect the life of Joan Brady. You weren't able to protect the life of Brenda Smith. You have a duty. You must discharge it."

"The defendant is dangerous. The defendant says in State's Exhibit 10, 'I don't care, Babe. Listen Carol, I kill your dumb ass, bitch, whore, whatever.' Dangerous. Some girl named Carol. We don't even know who she is. He knows who she was. He told me who she was when I cross-examined him."

"You can protect Elaine Clay. You can protect nine-year-old Robbie Davis. You're all they have now. I've done all I can do. Find the truth."

STATE v. PRICE

[337 N.C. 756 (1994)]

Argument concerning the effect of consecutive life sentences upon the period of a defendant's incarceration is, in another guise, argument about the legal effect of parole upon defendant's sentence. It is equally irrelevant to a determination of his sentence. The trial court acted correctly in disallowing both arguments.

326 N.C. at 83-84, 388 S.E.2d at 99-100.

In *Price II*, this Court found no error in the trial court's refusal to submit to the jury defendant's Virginia life sentence as a non-statutory mitigating circumstance. We rejected defendant's argument that this life sentence could have served as a basis for a sentence less than death in the North Carolina case. We noted defendant's reliance on *Skipper v. South Carolina*, 476 U.S. 1, 90 L. Ed. 2d 1 (1986); *Eddings v. Oklahoma*, 455 U.S. 104, 71 L. Ed. 2d 1 (1982); and *Lockett v. Ohio*, 438 U.S. 586, 57 L. Ed. 2d 973 (1978). We recognized these cases require as a matter of federal constitutional law that a capital sentencing jury be permitted to consider as a mitigating circumstance " ' "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." ' " *Skipper*, 476 U.S. at 4, 90 L. Ed. 2d at 6 (quoting *Eddings*, 455 U.S. at 110, 71 L. Ed. 2d at 8 (quoting *Lockett*, 438 U.S. at 604, 57 L. Ed. 2d at 990 (plurality opinion of Burger, C.J.))).

We concluded, however, as follows:

That defendant is currently serving a life sentence for another unrelated crime is not a circumstance which tends to justify a sentence less than death for the capital crime for which defendant is being sentenced. Although the sentence comprises part of his formal criminal record and was offered against defendant by the State in the sentencing hearing, "the additional protection to society" possibly achieved by his incarceration under that sentence is not an aspect of defendant's record. Because this evidence was irrelevant, we uphold the trial court's refusal to submit it as a mitigating circumstance. *See Lockett*, 438 U.S. at 604 n.12, 57 L. Ed. 2d at 990 n.12 ("Nothing in this opinion limits the traditional authority of a court to exclude, as irrelevant, evidence not bearing on the defendant's character, prior record, or the circumstances of his offense."); *see also State v. Robbins*, 319 N.C. 465, 519-23, 356 S.E.2d 279, 311-13 (1987) (evidence about possibility of parole is irrelevant to sentencing and the federal Constitution does not require consideration of such evidence).

331 N.C. at 634-35, 418 S.E.2d at 177.

**STATE v. PRICE**

[337 N.C. 756 (1994)]

Defendant now contends our decisions in *Price I* and *Price III* on the points at issue were erroneous in light of *Simmons,* which the United States Supreme Court decided after our decision in *Price III* and on the basis of which it has again remanded this case to us for reconsideration.

## II.

Defendant Simmons had been convicted previously of an offense involving a violent crime; therefore, under South Carolina law he was ineligible for parole if convicted and sentenced for any subsequent violent-crime offense. S.C. Code Ann. § 24-21-640 (Supp. 1993). During closing arguments, the prosecutor argued Simmons' potential for future dangerousness as a reason for imposing the death penalty. Simmons sought to rebut the prosecution's argument by presenting evidence which showed his unique psychological problems limited his future dangerousness to elderly women; therefore, there would be no reason to expect further acts of violence once he was isolated in a male prison setting. Concerned that the jury might not understand that life imprisonment did not include the possibility of parole, Simmons requested the trial court instruct the jury on the meaning of life imprisonment in light of the South Carolina statute which governed this question. When the trial court denied this request, Simmons asked alternatively that the jury be instructed that it was not to speculate that a sentence of life meant anything other than imprisonment for the balance of the defendant's natural life. Though denying this instruction, the trial court indicated it would consider a similar instruction were the jury to inquire about parole eligibility. When the jury subsequently returned from deliberations with a question as to whether life imprisonment included the possibility of parole, the trial court responded by charging the jury, in essence, that it was not to consider parole eligibility in reaching its verdict.[2] The jury resumed deliberation and shortly returned with a recommendation of death.

On appeal the South Carolina Supreme Court held the trial court's instruction given to the jury satisfied the defendant's request for a

2. The trial court instructed the jury on parole eligibility as follows:

You are instructed not to consider parole or parole eligibility in reaching your verdict. Do not consider parole or parole eligibility. That is not a proper issue for your consideration. The terms life imprisonment and death sentence are to be understood in their plan [sic] and ordinary meaning.

charge on parole ineligibility. *State v. Simmons*, —— S.C. ——, 427 S.E.2d 175, 179 (1993). The United States Supreme Court reversed, holding,

> [I]f the State rests its case for imposing the death penalty at least in part on the premise that the defendant will be dangerous in the future, the fact that the alternative sentence to death is life without parole will necessarily undercut the State's argument regarding the threat the defendant poses to society. Because the truthful information .of parole ineligibility allows the defendant to "deny or explain" the showing of future dangerousness, due process plainly requires that he be allowed to bring it to the jury's attention by way of argument by defense counsel or an instruction from the court.

—— U.S. at ——, 129 L. Ed. 2d at 145-46. The Court also held that the trial court's instructions on parole were insufficient to convey to the jury defendant's parole ineligibility. The Court noted that the prosecution "raised the specter" of Simmons' future dangerousness, but it then frustrated any effort by Simmons to demonstrate that "he would never be released on parole and thus, in his view, would not pose a future danger to society." *Id.* at ——, 129 L. Ed. 2d at 143. The Court relied on *Gardner v. Florida*, 430 U.S. 349, 362, 51 L. Ed. 2d 393, 404 (1977), which held that due process forbids execution of a person on the basis of information he had no opportunity to deny or explain.

The Court in *Simmons* ruled that South Carolina could "not create a false dilemma by advancing generalized arguments regarding defendant's future dangerousness while, at the same time, preventing the jury from learning that the defendant never will be released on parole." *Id.* at ——, 129 L. Ed. 2d at 147. The Court recognized that *California v. Ramos*, 463 U.S. 992, 77 L. Ed. 2d 1171 (1983), left to the states to determine whether and under what circumstances juries should be instructed on parole eligibility when it was available to life-sentenced defendants. *Id.* at ——, 129 L. Ed. 2d at 145.

### III.

While the State here did argue defendant Price's future dangerousness, unlike defendant Simmons, who under governing state law would not have been eligible for parole had he been given a life sentence, defendant Price would have been parole eligible had he been sentenced to life imprisonment in North Carolina and that life sentence made to run at the expiration of the life sentence received in

STATE v. PRICE

[337 N.C. 756 (1994)]

Virginia. N.C.G.S. § 15A-1371(a1) (1988); Va. Code Ann. § 53.1-151 (1985 Cumm. Supp. to 1982 Repl.).[3] Further, there was no jury inquiry in the case before us regarding defendant Price's parole eligibility. It is well settled with us that absent a jury inquiry on the subject, a capital defendant's parole eligibility is irrelevant to, and should not be considered by the jury in making, a capital sentencing determination. *See State v. Skipper*, 337 N.C. 1, 43, 446 S.E.2d 252, 275 (1994); *State v. Robinson*, 336 N.C. 78, 123, 443 S.E.2d 306, 329 (1994); *State v. Robbins*, 319 N.C. 465, 518, 356 S.E.2d 279, 310, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987).[4]

We think the United States Supreme Court's decision in *Simmons* is limited to those situations where the alternative to a sentence of death is life imprisonment without possibility of parole. The language and rationale of the main opinion and the concurring opinions are expressly confined to situations in which a defendant sentenced to life imprisonment will not be eligible for parole. The Court also acknowledged its earlier *Ramos* decision and distinguished it from the life-without-parole situation. We have previously determined that *Simmons* is so limited. *State v. Payne*, 337 N.C. 505, 448 S.E.2d 93 (1994); *State v. Bacon*, 337 N.C. 66, 446 S.E.2d 542 (1994); *State v. Skipper*, 337 N.C. 1, 446 S.E.2d 252.

We conclude, therefore, that *Simmons* does not require that we alter our prior decisions on the points at issue. We again conclude that the trial court's rulings on these points as delineated above were without error. We again affirm defendant's conviction of first-degree murder and sentence of death and remand the case to Superior Court, Person County, for proceedings consistent with this opinion.

DEATH SENTENCE AFFIRMED; MANDATE REINSTATED; CASE REMANDED.

---

3. Defendant makes no contention that he would be ineligible for parole under his Virginia sentence or under a North Carolina sentence of life imprisonment whether made to run concurrently with or at the expiration of the Virginia sentence.

4. The General Assembly recently amended N.C.G.S. § 15A-2002 to require the trial court to charge the jury in a capital sentencing proceeding as to parole eligibility of a defendant sentenced to life imprisonment. N.C.G.S. § 15A-2002 (Act of 23 March 1994, ch. 21, sec. 5, 1994 N.C. Extra Sess. Serv. 71). This amendment, however, is effective 1 October 1994 and is to be applied prospectively only. N.C.G.S. § 15A-2002 official commentary (1993).