STATE OF NORTH CAROLINA v. ARCHIE LEE BILLINGS

No. 216A96

(Filed 8 May 1998)

### 1. Jury § 141 (NCI4th)— jury selection—perceptions about parole eligibility—disallowance of questions

The trial court properly denied defendant's pretrial motion to conduct a *voir dire* in this capital trial regarding the jurors' perceptions about parole eligibility. The decision of *Simmons v. South Carolina*, 512 U.S. 154, is inapplicable when defendant would be eligible for parole if given a life sentence.

STATE v. BILLINGS

[348 N.C. 169 (1998)]

**2. Criminal Law § 78 (NCI4th Rev.)— pretrial publicity— denial of change of venue—no due process denial**

The trial court did not err by denying defendant's motions for a change of venue or a special venire in this capital trial because of pretrial publicity where defendant did not exhaust his peremptory challenges; the jurors who decided the case each stated unequivocally that they would be able to reach a verdict based solely upon the evidence presented at trial; there was no indication that news accounts of the crimes or the trial were other than routine factual accounts; and nothing in the record would support a conclusion that either the community from which the jury was drawn or the trial proceedings were so infected by prejudice that they must be deemed to have deprived defendant of the opportunity to receive a fair trial and, thereby, to have denied him due process.

**3. Jury § 222 (NCI4th)— death penalty views—excusal for cause**

The trial court did not err by excusing a prospective juror for cause because of his capital punishment views where the juror stated that his feelings toward the death penalty could "probably" substantially impair his ability to consider voting for the death penalty and that his longstanding moral convictions about the death penalty would substantially impair him in the sentencing process and prevent him from voting for the death penalty.

**4. Jury § 123 (NCI4th)— jury selection—questions ruled improper—exercise of peremptory challenge—failure to exhaust peremptory challenges—absence of prejudice**

Defendant was not prejudiced by the trial court's ruling that defendant's questioning of a prospective juror about the statutory mitigating circumstance concerning defendant's impairment by cocaine use was an improper attempt to "stake out" the juror where defendant exercised a peremptory challenge to excuse the juror but did not exhaust his peremptory challenges during jury selection.

**5. Appeal and Error § 150 (NCI4th)— constitutional claim— failure to raise in trial court**

A defendant who failed to raise constitutional claims in the trial court is barred from asserting them for the first time on appeal.

STATE v. BILLINGS

[348 N.C. 169 (1998)]

### 6. Homicide § 669 (NCI4th)— first-degree murder—voluntary intoxication instruction not required

The trial court did not err in refusing to instruct the jury on voluntary intoxication in a first-degree murder prosecution where there was sufficient evidence to support the trial court's conclusion that, although the evidence was sufficient to support a finding that defendant was intoxicated, it was insufficient to support a finding that defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill.

### 7. Criminal Law § 570 (NCI4th Rev.)— unresponsive testimony—instructions to disregard—mistrial denied

The trial court did not err by denying defendant's motion for a mistrial when a witness volunteered his opinion that conditions he observed at the crime scene indicated a struggle, and the trial court sustained defendant's objection, allowed his motion to strike, and instructed the jury to disregard the conclusory statement made by the witness; the prosecutor then rephrased the question to the witness so as to avoid eliciting the stricken opinion testimony but the witness again gave an answer that included the previously stricken statement of opinion; and the trial court again sustained defendant's objection, instructed the jury to disregard the conclusory statement, and admonished the witness to testify only as to what he had seen. The jury is presumed to have followed the instructions of the trial court.

### 8. Criminal Law § 475 (NCI4th Rev.)— prosecutor's jury argument—insufficient evidence of voluntary intoxication—no gross impropriety

The prosecutor's jury argument in the guilt phase of a capital first-degree murder trial to the effect that defendant had not produced sufficient evidence of intoxication to justify even an instruction as to whether voluntary intoxication may have prevented defendant from forming a premeditated and deliberate intent to kill was not so grossly improper as to require the trial court to intervene *ex mero motu* since the argument raised a question about the possibility of an additional defense as to which the jury was not instructed and which defendant was not entitled to have considered by the jury, and the argument was thus helpful to defendant.

**9. Criminal Law § 474 (NCI4th Rev.)— capital trial—prosecutor's closing argument—overhead photographic projections**

The record fails to show that the prosecutor's use of overhead photographic projections during his closing argument in the guilt determination phase of a capital trial was prejudicial error.

**10. Criminal Law § 422 (NCI4th Rev.)— capital sentencing— course of conduct—reference to other cases—no gross impropriety**

Assuming that it was improper for the prosecutor to argue during a capital sentencing proceeding that "Prior cases [have] found course of conduct when a woman was kidnapped from the car and raped," this brief reference to other unspecified cases with no indication as to whether those cases had been upheld on appeal was not so grossly improper as to require the trial court to intervene *ex mero motu.*

**11. Criminal Law § 458 (NCI4th Rev.)— capital sentencing— prosecutor's argument—mitigating circumstances— request by defendant—absence of prejudice**

Defendant was not prejudiced by the prosecutor's argument that the mitigating circumstances submitted to the jury had been requested by defendant when submission of the (f)(1) mitigating circumstance that defendant had no significant history of prior criminal activity was not requested but was opposed by defendant where one or more jurors found this mitigator to exist and weighed it in favor of defendant. N.C.G.S. § 15A-2000(f)(1).

**12. Criminal Law § 458 (NCI4th Rev.)— capital sentencing—prosecutor's argument—rejection of mitigating circumstances**

The prosecutor's arguments in a capital sentencing proceeding that jurors should reject mitigating circumstances because many people had the same problems in their lives as defendant but did not commit murder, and that even if the mitigating circumstances were found to exist, they did not justify the killing were not grossly improper and did not require intervention by the trial court on its own motion.

**13. Criminal Law § 460 (NCI4th Rev.)— capital sentencing— prosecutor's argument—death penalty not prohibited by Bible—no gross impropriety**

The prosecutor's jury argument in a capital sentencing proceeding which contended that the Bible did not prohibit the death penalty but which did not ask the jury to impose divine law was not so grossly improper as to require the trial court to intervene *ex mero motu.*

**14. Criminal Law § 473 (NCI4th Rev.)— capital trial—prosecutor's argument—defense contrived by defendant**

The prosecutor did not improperly argue in a capital trial that defense counsel had "contrived" a defense; rather, he argued that the defense was contrived by defendant after defendant learned that one victim had survived, and this argument was not improper. .

**15. Criminal Law § 442 (NCI4th Rev.)— capital trial—prosecutor's argument—lack of remorse**

The prosecutor's argument in a capital trial that defendant had not shown any remorse for his actions was not an improper comment on defendant's exercise of his right to silence. The State is allowed to comment upon defendant's demeanor in the courtroom during closing arguments, and bringing defendant's lack of any demonstration of remorse to the attention of the jury is proper so long as the prosecutor does not urge the jury to consider lack of remorse as an aggravating circumstance.

**16. Criminal Law § 461 (NCI4th Rev.)— capital sentencing— prosecutor's argument—effect of failure to recommend death penalty**

It was not improper for the prosecutor to argue in a capital sentencing proceeding that if the jury failed to recommend death, defendant might get out of prison and hurt other people or the surviving victim, and that the surviving victim would not be able to sleep peacefully if the jury came back with a recommendation of anything other than death because defendant would not be locked up tight on death row. Further, any possible impropriety was cured by the trial court's instruction to the jury and his admonition to counsel.

**17. Criminal Law § 474 (NCI4th Rev.)— capital sentencing— prosecutor's argument—audiotape of 911 call**

Where an audiotape of the call made by the murder victim's brother to the 911 emergency communications center was admitted into evidence in the guilt phase of defendant's capital trial, it was proper for the prosecutor to play the audiotape during closing arguments in the capital sentencing proceeding for the jury's consideration.

**18. Criminal Law § 1382 (NCI4th Rev.)— capital sentencing— mitigating circumstance—no significant criminal history**

The trial court did not err during a capital sentencing proceeding by submitting as a mitigating circumstance that defendant had no significant history of prior criminal activity where the evidence tended to show that defendant had been convicted of five misdemeanors and two felonies and had unlawfully consumed drugs and alcohol as a child and adult. The trial court properly concluded that a reasonable juror could find that defendant had no significant history of prior criminal activity within the meaning of N.C.G.S. § 15A-2000(f)(1) and that it was required to submit this mitigating circumstance to the jury even though defendant opposed its submission.

**19. Criminal Law § 1402 (NCI4th Rev.)— death penalty not disproportionate**

A sentence of death imposed on defendant for first-degree murder was not excessive or disproportionate where defendant was convicted under theories of premeditation and deliberation and the felony murder rule; the jury also found defendant guilty of first-degree burglary, assault with a deadly weapon with intent to kill inflicting serious injury, first-degree kidnapping, and first-degree rape; the jury found as aggravating circumstances that the murder was committed while defendant was engaged in committing the felony of rape, that the murder was especially heinous, atrocious, or cruel, and that the murder was part of a course of conduct which included the commission by defendant of other crimes of violence against another person; the evidence showed that defendant raped the eleven-year-old female victim in her home and then kidnapped and killed her; and the evidence also showed that defendant repeatedly stabbed the victim's thirteen-year-old brother.

STATE v. BILLINGS

[348 N.C. 169 (1998)]

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Allen (J.B., Jr.), J., on 5 June 1996 in Superior Court, Caswell County, upon a jury verdict finding defendant guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to additional judgments for first-degree burglary, assault with a deadly weapon with intent to kill inflicting serious injury, and first-degree rape was allowed by the Supreme Court on 2 June 1997. Heard in the Supreme Court 18 November 1997.

*Michael F. Easley, Attorney General, by Thomas S. Hicks, Special Deputy Attorney General, and Teresa L. Harris, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Marshall Dayan, Assistant Appellate Defender, for defendant-appellant.*

MITCHELL, Chief Justice.

On 12 September 1995, defendant was indicted for first-degree murder, first-degree burglary, assault with a deadly weapon with intent to. kill inflicting serious injury, first-degree kidnapping, and first-degree rape. On 18 September 1995, defendant filed a motion for change of venue or, in the alternative, a special venire, which was denied by Judge W. Osmond Smith, III, after hearing at the 6 November 1995 Criminal Session of Superior Court, Caswell County. On 1 May 1996, defendant filed an amended motion for change of venue or, in the alternative, a special venire, which was denied after hearing by Judge J.B. Allen, Jr., at the 6 May 1996 Criminal Session of Superior Court, Caswell County.

Defendant was tried capitally at the 13 May 1996 Criminal Session of Superior Court, Caswell County. The jury found defendant guilty of first-degree murder on the basis of premeditation and deliberation and under the felony murder rule. The jury also found defendant guilty of first-degree burglary, assault with a deadly weapon with intent to kill inflicting serious injury, first-degree kidnapping, and first-degree rape. After a separate capital sentencing proceeding, the jury recommended a sentence of death for the first-degree murder conviction. On 5 June 1996, the trial court sentenced defendant to death. Defendant appealed his conviction for first-degree murder and death sentence to this Court as of right. His motion to bypass the Court of Appeals as to his appeal of the remaining convictions, except the kidnapping, was allowed by this Court 2 June 1997.

The State's evidence tended to show *inter alia* that Robert Jackson left his Caswell County mobile home at 1:50 a.m. on 7 July 1995 to gather and ready a herd of cows for milking. Jackson left his two children, Bobby, thirteen years old, and Amy, eleven years old, asleep in their beds.

Sometime between 1:50 a.m. and 4:50 a.m., defendant entered the mobile home, stabbed Bobby repeatedly with a knife, and began his assault on Amy. Bobby struggled to a telephone in the kitchen and dialed 911. When emergency personnel arrived at 5:00 a.m., Bobby was found on the kitchen floor in a pool of his own blood. Defendant had stabbed the boy some twenty-three times. Bobby identified defendant as the man who stabbed him and whom he had seen carry his sister out of the mobile home. It was not until some twelve hours later that Amy's body was found in a field, with her pajama bottoms around her feet and her pajama top partially torn off. Amy had died from a stab to her throat that had severed her carotid artery. An autopsy revealed that Amy had also been sexually assaulted. Defendant worked with Jackson on the dairy farm, and both children knew him well. Defendant was arrested by sheriff's deputies on the dairy farm the same morning the children were attacked.

**[1]** By his first assignment of error, defendant contends that the trial court erred in denying his pretrial motion to conduct a *voir dire* regarding the jury's perceptions about parole eligibility. This Court has consistently decided this issue contrary to defendant's contention. *State v. Chandler*, 342 N.C. 742, 467 S.E.2d 636, *cert. denied*, — U.S. —, 136 L. Ed. 2d 133 (1996); *State v. Powell*, 340 N.C. 674, 459 S.E.2d 219 (1995), *cert. denied*, — U.S. —, 133 L. Ed. 2d 688 (1996); *State v. Price*, 337 N.C. 756, 448 S.E.2d 827 (1994), *cert. denied*, 514 U.S. 1021, 131 L. Ed. 2d 224 (1995); *State v. Payne*, 337 N.C. 505, 448 S.E.2d 93 (1994), *cert. denied*, 514 U.S. 1038, 131 L. Ed. 2d 292 (1995). As we explained in *Payne*, the United States Supreme Court's decision in *Simmons v. South Carolina*, 512 U.S. 154, 129 L. Ed. 2d 133 (1994), does not affect our position on this issue when, as here, defendant would be eligible for parole if given a life sentence. *Payne*, 337 N.C. at 516-17, 448 S.E.2d at 99-100. We continue to adhere to our prior rulings on this issue. This assignment of error is overruled.

**[2]** By another assignment of error, defendant contends that the trial court erred in denying his pretrial motions for change of venue or special venire and his renewals of those motions during jury selec-

tion. The trial court conducted pretrial hearings and denied the motions. The trial court indicated, however, that it would allow defendant to renew his motion and would reconsider the matter if it became apparent at any time that a fair and impartial jury could not be selected.

A defendant seeking a new trial on the basis of a trial court's denial of a motion for change of venue or special venire must ordinarily establish specific and identifiable prejudice against him as a result of pretrial publicity. As we have stated in numerous cases, for a defendant to meet his burden of showing that pretrial publicity prevented him from receiving a fair trial, he ordinarily must show *inter alia* that jurors with prior knowledge decided the case, that he *exhausted his peremptory challenges*, and that a juror objectionable to him sat on the jury. *State v. Barnes*, 345 N.C. 184, 204, 481 S.E.2d 44, 54, cert. denied, —— U.S. ——, —— L. Ed. 2d ——, 66 U.S.L.W. 3260 (1997), cert. denied, —— U.S. ——, —— L. Ed. 2d ——, 1998 WL 125185 (March 23, 1998) (No. 97-5089); *State v. Jerrett*, 309 N.C. 239, 255, 307 S.E.2d 339, 347-48 (1983).

In this case, defendant did not exhaust his peremptory challenges before the twelve jurors who decided his case were seated; he used only ten of his fourteen peremptory challenges. As the jurors at issue in this case each stated unequivocally that they would be able to reach a verdict based solely upon the evidence presented at trial, defendant did not exhaust his peremptory challenges, and defendant has not offered particular objections to any individual juror, defendant has not shown any specific identifiable prejudice that necessitated a change of venue or special venire. *Barnes*, 345 N.C. at 205, 481 S.E.2d at 54.

Our examination of this issue in the present case, however, must go further. We indicated in *State v. Jerrett* that where the totality of the circumstances reveals that an entire county's population is "infected" with prejudice against a defendant, the defendant has fulfilled his burden of showing that he could not receive a fair trial in that county even though he has not shown specific identifiable prejudice. *Jerrett*, 309 N.C. at 258, 307 S.E.2d at 349. We based this conclusion on the United States Supreme Court's decision in *Sheppard v. Maxwell*, 384 U.S. 333, 16 L. Ed. 2d 600 (1966). *Sheppard* involved "a trial infected not only by a background of extremely inflammatory publicity but also by a courthouse given over to accommodate the public appetite for carnival." *Murphy v. Florida*, 421 U.S. 794, 799, 44

L. Ed. 2d 589, 594 (1975). The Supreme Court stated in *Sheppard* that, while a defendant must ordinarily show specific prejudice, " 'at times a procedure employed by the State involves such a probability that prejudice will result that it is deemed inherently lacking in due process.' " *Sheppard*, 384 U.S. at 352, 16 L. Ed. 2d at 614 (quoting *Estes v. Texas*, 381 U.S. 532, 542-43, 14 L. Ed. 2d 543, 550 (1965)).

In *Jerrett*, this Court noted that "the crime occurred in a small, rural and closely-knit county where the entire county was, in effect, a neighborhood." *Jerrett*, 309 N.C. at 256, 307 S.E.2d at 348. Alleghany County, where Jerrett was tried, had a population at that time of 9,587 people. *Id.* at 252 n.1, 307 S.E.2d at 346 n.1 (citing U.S. Census Report). The *voir dire* in *Jerrett* revealed that one-third of the prospective jurors knew the victim or some member of the victim's family, many jurors knew potential State's witnesses, four jurors who decided the case knew the victim's immediate family or other relatives, six jurors who decided the case knew State's witnesses, and the foreman stated that he had heard a victim's relative discussing the case in an emotional manner. *Id.* at 257, 307 S.E.2d at 348-49. The jury in *Jerrett* was examined collectively on *voir dire* rather than individually, thereby allowing prospective jurors to hear that other prospective jurors knew the victim and the victim's family, that some had already formed opinions in the case, and that some would be unable to give the defendant a fair trial. *Id.* at 257-58, 307 S.E.2d at 349. Additionally, in *Jerrett*, a deputy sheriff of the county, a magistrate of the county, and a private prosecutor retained by the victim's family and appearing as counsel for the State with the district attorney all expressed the opinion that it would be difficult if not impossible to select a jury in Alleghany County comprised of jurors who had not heard about, discussed, and formed opinions about the case. *Id.* at 252-54, 307 S.E.2d at 346-47. A majority of this Court concluded that based on the totality of the circumstances, there was a reasonable likelihood that Jerrett would not be able to receive a fair trial before a local jury. *Id.* at 258, 307 S.E.2d at 349.

Several factors distinguish the case *sub judice* from both *Sheppard* and *Jerrett*. With a population exceeding 20,000, *North Carolina Manual 1995-1996*, at 959 (Lisa A. Marcus ed.), Caswell County does not constitute a single small "neighborhood" like that at issue in *Jerrett*. Further, the population of the community from which the jury is to be drawn is not determinative and should not be the central focus when determining whether a change of venue is necessary. *See Barnes*, 345 N.C. at 206, 481 S.E.2d at 55 (focusing on matters

such as the exposure of prospective jurors to publicity and its potential prejudice in determining whether prejudicial publicity had "pervaded the proceedings").

While a number of prospective jurors had heard about the crimes involved in the present case prior to trial, only one of the seated jurors had any preconceived notions about the guilt or innocence of defendant Billings. That juror stated that she could put aside anything she had heard outside the courtroom and could find defendant not guilty should the State fail to prove him guilty beyond a reasonable doubt. Defendant did not challenge this juror.

Furthermore, the level of personal familiarity that the *Jerrett* jurors had with the victim, the victim's family, and the State's witnesses is not present in this case. The United States Supreme Court concluded that the prejudicial influence of the news media in cases like *Sheppard*, 384 U.S. 333, 16 L. Ed. 2d 600; *Estes v. Texas*, 381 U.S. 532, 14 L. Ed. 2d 543; and *Rideau v. Louisiana*, 373 U.S. 723, 10 L. Ed. 2d 663 (1963), "pervaded the proceedings" to the prejudice of the defendant in the community at large and in the courtroom, and resulted in a "circus atmosphere" in the courtroom itself during trial. *Murphy*, 421 U.S. at 799, 44 L. Ed. 2d at 594 (discussing *Estes*). The record in this case, on the other hand, does not show that the legal proceedings or news accounts at issue here were anything but routine. Rather, the trial court conducted all of the proceedings here in an able and commendable fashion, with the solemnity and gravity befitting a proceeding in which defendant's fate would be determined. Further, there is no indication here that news accounts of the crimes or the trial were other than routine factual accounts.

The United States Supreme Court warned in *Murphy* that its prior decisions "cannot be made to stand for the proposition that juror exposure to information about a state defendant's prior convictions or to news accounts of the crime with which he is charged alone presumptively deprives the defendant of due process." *Id.* We have consistently held that factual news accounts with respect to the commission of a crime and the pretrial proceedings relating to that crime do not of themselves warrant a change of venue. *See, e.g., State v. Soyars*, 332 N.C. 47, 53, 418 S.E.2d 480, 484 (1992). Before a change of venue or special venire will be required, pretrial publicity must create "in the county in which the prosecution is pending so great a prejudice against the defendant that he cannot obtain a fair and impartial trial." N.C.G.S. § 15A-957(1) (1997).

The United States Supreme Court determined in *Rideau v. Louisiana*, 373 U.S. 723, 10 L. Ed. 2d 663, that no matter what could be shown during the selection of the jury, the community in which the defendant was tried must be deemed to be so prejudiced as a result of pretrial publicity that the defendant could not receive a fair trial. That case is unique, however, because at a pretrial hearing on his motion for change of venue, which the trial court denied, evidence revealed that his lengthy televised confession without benefit of counsel was participated in by law enforcement authorities and was broadcast repeatedly to the local viewing audience in the community from which the jury was drawn. The *Rideau* case is "an aberration which should be confined to its facts and not brought into play here." *State v. McDougald*, 38 N.C. App. 244, 249, 248 S.E.2d 72, 78 (1978) *appeal dismissed and disc. rev. denied*, 296 N.C. 413, 251 S.E.2d 472 (1979).

While at least ten of the seated jurors in this case had been exposed to some information about the crimes before trial, there is no indication that these factual accounts were prejudicial to defendant. Certainly, nothing in the record in the present case would permit this Court to conclude that either the community from which the jury was drawn or the trial proceedings were so infected by prejudice that they must be deemed to have deprived defendant of the opportunity to receive a fair trial and, thereby, to have denied him due process. We therefore conclude that, viewing the totality of the circumstances in this case, there is not a reasonable likelihood that pretrial publicity prevented defendant from receiving a fair trial in Caswell County, and the trial court did not err in refusing to grant defendant's motions for change of venue or a special venire.

[3] By another assignment of error, defendant contends that the trial court erred by excusing for cause a venire member who was qualified and fit to serve. Prospective juror Epling initially indicated he felt that he would be a fair juror. Upon questioning by the prosecutor, Epling stated he thought that he could find a defendant guilty knowing that there would then be a capital sentencing proceeding but that he "would have to give [it] some thought." He said he was "kind of split" on the death penalty. He stated that he could understand the application of the death penalty in some circumstances but that he did not know that he could be the one to make the decision. He stated that his feelings toward the death penalty could "probably" substantially impair his ability to consider voting for the death penalty. Epling also stated that his longstanding moral convictions about the

death penalty would substantially impair him in the sentencing process and prevent him from voting for the death penalty.

The standard for determining when a prospective juror may be excluded for cause because of his views on capital punishment is whether the prospective "juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.' " *Wainwright v. Witt*, 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52 (1985) (quoting *Adams v. Texas*, 448 U.S. 38, 45, 65 L. Ed. 2d 581, 589 (1980)); *accord State v. Davis*, 325 N.C. 607, 621-22, 386 S.E.2d 418, 425 (1989), *cert. denied*, 496 U.S. 905, 110 L. Ed. 2d 268 (1990). "[B]ecause a prospective juror's bias for or against the death penalty cannot always be proven with unmistakable clarity," this Court must give great deference to the trial court's judgment concerning whether a prospective juror would be able to follow the law. *State v. Miller*, 339 N.C. 663, 679, 455 S.E.2d 137, 145, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 169 (1995). Here, the record on appeal will support only one conclusion; the prospective juror's views would have prevented his proper performance of the duties of a juror. The trial court did not err in excusing him for cause, and this assignment of error is overruled.

[4] By another assignment of error, defendant contends that the trial court erred in denying him the opportunity to question prospective jurors regarding their ability to fairly and impartially consider statutory mitigating circumstances. Specifically, defendant contends that the trial court improperly limited his *voir dire* of prospective juror Massey.

Counsel for defendant asked prospective juror Massey whether the statutory mitigating circumstance concerning defendant's impairment by cocaine use, N.C.G.S. § 15A-2000(f)(6) (1997), would in his opinion be mitigating. Upon Massey's answer that his feeling would be so strong that it would almost be impossible for him to consider this circumstance to be mitigating, defendant challenged Massey for cause. The trial court then instructed Massey on the law concerning aggravating and mitigating circumstances, and Massey stated that he could follow the law and consider statutory mitigating circumstances. Counsel for defendant then resumed questioning:

Q Mr. Massey, do you understand that it's okay to have an opinion different from the law, and many of us do concerning this same issue, sir?

A  Well, yeah, as a feeling, conviction, moralities, yeah.

Q  The question I have for you, would it substantially impair your ability to consider the mitigating evidence that we are discussing here, sir, the evidence of self-induced cocaine use?

The prosecutor then objected, and the trial court sustained the objection on the ground that defendant's questioning was an attempt to "stake out" the juror.

Defendant exercised a peremptory challenge to excuse prospective juror Massey, but defendant did not exhaust his peremptory challenges during jury selection. Thus, defendant cannot show prejudice resulting from the trial court's ruling. N.C.G.S. § 15A-1214(h) (1997); *State v. McCarver*, 341 N.C. 364, 378, 462 S.E.2d 25, 32 (1995) (no prejudice to defendant results from a trial court's failure to allow defense counsel to elicit additional information from a prospective juror where defendant does not exhaust his peremptory challenges), *cert. denied*, 517 U.S. 1110, 134 L. Ed. 2d 482 (1996); *State v. Conner*, 335 N.C. 618, 633, 440 S.E.2d 826, 834 (1994) (same); *State v. Avery*, 315 N.C. 1, 21, 337 S.E.2d 786, 797 (1985) (same). This assignment of error is overruled.

**[5]** By another assignment of error, defendant contends that the trial court erred in denying his request for a jury instruction on voluntary intoxication. He also contends for the first time on appeal that failure to give the instruction denied him due process of law in violation of both the state and federal constitutions. Defendant, having failed to raise these constitutional claims at trial, is barred from asserting them for the first time on appeal to this Court. *State v. Hester*, 343 N.C. 266, 271, 470 S.E.2d 25, 28 (1996); *State v. Hutchins*, 303 N.C. 321, 341, 279 S.E.2d 788, 801 (1981). Therefore, we address this assignment of error only in the context of state common law.

**[6]** It is "well established that an instruction on voluntary intoxication is not required in every case in which a defendant claims that he killed a person after consuming intoxicating beverages or controlled substances." *State v. Baldwin*, 330 N.C. 446, 462, 412 S.E.2d 31, 41 (1992). Evidence of mere intoxication is not enough to meet defendant's burden of production. *State v. Mash*, 323 N.C. 339, 346, 372 S.E.2d 532, 536 (1988). Before the trial court will be required to instruct on voluntary intoxication, defendant must produce substantial evidence which would support a conclusion by the trial court that at the time of the crime for which he is being tried

"defendant's mind and reason were so completely intoxicated and overthrown as to render him utterly incapable of forming a deliberate and premeditated purpose to kill. In absence of some evidence of intoxication to such degree, the court is not required to charge the jury thereon."

*State v. Strickland*, 321 N.C. 31, 41, 361 S.E.2d 882, 888 (1987) (quoting *State v. Medley*, 295 N.C. 75, 79, 243 S.E.2d 374, 377 (1978)) (citations omitted).

The trial court's careful consideration of the evidence is clear from its forty-page order which concluded that there was sufficient evidence to support a finding that defendant was intoxicated but not sufficient evidence to support a finding that the intoxication was to the degree required for an instruction on voluntary intoxication. We agree. This assignment of error is overruled.

By another assignment of error, defendant contends that the trial court erred in denying his motion for a mistrial and in allowing the prosecutor to engage in misconduct. Defendant complains that the prosecutor's direct examination of a witness and his arguments both during the guilt determination and capital sentencing phases of the trial were designed to improperly fan the flames of passion that marked the nature of the crimes for which he was on trial. We disagree.

[7] Defendant contends in support of this assignment that the prosecutor persisted in attempting to elicit testimony of a witness after the trial court had sustained an objection to similar testimony and had instructed the jury to disregard the testimony. Examination of the trial transcript reveals that upon questioning Eric Taylor, the prosecutor asked what observations he had made at the crime scene. The witness described the conditions he had observed at the scene and then volunteered his opinion that conditions he had observed indicated a struggle. Defendant objected, and the trial court promptly sustained his objection and allowed his motion to strike the opinion testimony. The trial court then instructed the jury to disregard the conclusory statement made by the witness. The prosecutor then rephrased the question so as to avoid eliciting the opinion testimony that had been stricken. The witness failed to limit his response to the information sought by the prosecutor's question, however, and again gave an answer that included the previously stricken statement of opinion. The trial court again sustained defendant's objection, instructed the jury to disregard the witness' conclusory statement,

and admonished the witness to testify only as to what he had seen. The jury is presumed to have followed the instructions of the trial court. *State v. Best*, 342 N.C. 502, 516, 467 S.E.2d 45, 54, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 139 (1996).

[8] In further support of this assignment, defendant complains of two portions of the prosecutor's closing argument to the jury during the guilt determination phase of the trial. Defendant first contends that the prosecutor erroneously stated to the jury that it could find that intoxication prevented defendant from forming a premeditated and deliberate intent to kill only if defendant had borne the burden of showing that his intoxication "rendered him utterly incapable of forming a deliberated and premeditated intent to kill." Defendant correctly contends that the prosecutor was describing the burden of production defendant must meet in order to be entitled to a jury instruction on voluntary intoxication that would permit the jury to determine whether defendant's intoxication negated such intent. *Mash*, 323 N.C. 339, 372 S.E.2d 532. Defendant also correctly contends that this is not the standard to be applied by the jury in determining whether defendant formed a premeditated and deliberate intent to kill. The burden always rests with the State to prove beyond a reasonable doubt that the defendant formed a premeditated and deliberate intent to kill.

Defendant did not object to the prosecutor's argument concerning voluntary intoxication, nor did he allege that it was a basis for his motion for a mistrial. The scope of review when a defendant fails to object at trial is whether the argument complained of was so grossly improper that the trial court erred in failing to intervene *ex mero motu*. *State v. Holden*, 346 N.C. 404, 431, 488 S.E.2d 514, 528 (1997), *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 118 S.Ct. 1074 (1998).

The prosecutor's argument here really was no more than a statement that defendant had not produced sufficient evidence of intoxication to justify even an instruction on voluntary intoxication. Nevertheless, it was improper for the prosecutor or counsel for defendant to make any argument in the guilt determination phase of the trial as to whether voluntary intoxication may have prevented defendant from forming a premeditated and deliberate intent to kill, since the evidence at trial did not permit the trial court to submit that issue for the jury's consideration. However, it is difficult to imagine how the ill-advised argument of the prosecutor could have been anything but helpful to defendant, since it raised a question about the possibility of an additional defense as to which the jury was not

instructed and which defendant was not entitled to have considered by the jury. Apparently, defense counsel recognized this fact and, accordingly, allowed the prosecutor to make the argument without objection. Therefore, in the context of this case, we conclude that the prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu*.

[9] Defendant next contends in support of this assignment that the prosecutor's use of overhead photographic projections during his closing argument in the guilt determination phase was error. The prosecutor stated for the record that he had used some "overheads" during his argument. The record does not describe these overheads. Defendant has the duty to provide a proper and complete record. *State v. Alston*, 307 N.C. 321, 341, 298 S.E.2d 631, 644 (1983); N.C. R. App. P. 9. Nothing in the record indicates that whatever may have been displayed to the jury was improperly prejudicial. " 'An appellate court is not required to, and should not, assume error by the trial judge when none appears on the record before the appellate court.' " *Alston*, 307 N.C. at 341, 298 S.E.2d at 644 (quoting *State v. Williams*, 274 N.C. 328, 333, 163 S.E.2d 353, 357 (1968)). Nevertheless, defendant appears to contend that any use of "large, overhead slides" by the prosecution has been strictly forbidden by this Court. This simply is not the law. *See State v. Hennis*, 323 N.C. 279, 372 S.E.2d 523 (1988). As defendant has pointed to nothing in the record indicating error by the trial court in this regard, we will find none.

[10] Defendant further contends in support of this assignment that during the capital sentencing proceeding, the prosecutor improperly argued the facts of other reported cases in which jurors had found the aggravating circumstance that the murder was part of a course of conduct which included the commission of violence against another person. N.C.G.S. § 15A-2000(e)(11). This Court has pointed out that "counsel may not read the facts contained in a published opinion together with the result to imply that the jury in his case should return a favorable verdict for his client." *State v. Gardner*, 316 N.C. 605, 611, 342 S.E.2d 872, 876 (1986). Here, the prosecutor's argument that defendant complains of was, "Prior cases [have] found course of conduct when a woman was kidnapped from the car and raped." Defendant did not object to this argument. Assuming *arguendo* that the argument was improper, we conclude that this brief reference to other unspecified cases with no indication as to whether those cases had been upheld on appeal did not amount to an argument so grossly improper as to require the trial court to intervene *ex mero motu*.

**[11]** Defendant also complains in support of this assignment that the prosecutor improperly argued to the jury that defendant had requested submission of the mitigating circumstance that he had no significant history of prior criminal activity. N.C.G.S. § 15A-2000(f)(1). Defendant argues that the prosecutor knew that defendant had not requested this mitigating circumstance and had, in fact, urged the trial court not to submit it to the jury.

The argument complained of was as follows:

> The first [mitigating circumstance] that will be submitted for your consideration, and it is no opinion of the Court that these are there. These mitigating factors have been requested by the defendant.
>
> [DEFENSE COUNSEL]: Objection, Your Honor.
>
> THE COURT: Well, ladies and gentlemen, these arguments of these attorneys are in no way evidence to be considered, and this is not your instructions on the law.
>
> The attorneys may argue their contentions, but this is not evidence, and this is not your law. You will take the law from the Court.

The prosecutor then argued that there was no evidence to support the (f)(1) mitigating circumstance.

As can readily be seen, the prosecutor's argument that the mitigating circumstance had been requested by defendant was not directed specifically toward the (f)(1) mitigator, but to the mitigating circumstances in their totality. He did not focus on the (f)(1) mitigator until he began to argue that there was no evidence to support that mitigating circumstance. In any event, we conclude that the prosecutor's argument could not have prejudiced defendant, as one or more jurors found this mitigator to exist and weighed it in favor of defendant.

**[12]** Defendant further contends in support of this assignment that the prosecutor urged the jurors to reject mitigating circumstances because many people had the same problems in their lives as defendant but did not commit murder, and even if the mitigating circumstances were found to exist, they did not justify the killing. Defendant did not object to these arguments at trial but now contends that they were so grossly improper as to require the trial court to intervene *ex mero motu.* "[P]rosecutors may legitimately attempt to deprecate or

belittle the significance of mitigating circumstances." *State v. Basden*, 339 N.C. 288, 305, 451 S.E.2d 238, 247 (1994), *cert. denied*, 515 U.S. 1152, 132 L. Ed. 2d 845 (1995). This was the effect of the arguments complained of here, and we conclude that they were not grossly improper and did not require intervention by the trial court on its own motion.

[13] Defendant also contends in support of this assignment that during the capital sentencing proceeding, the prosecutor argued that the law is divinely inspired by referring to the law as a "statute of judgment." Defendant did not object. This Court has noted the wide latitude allowed counsel in closing arguments. *State v. Artis*, 325 N.C. 278, 331, 384 S.E.2d 470, 500 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 601 (1990). The prosecutor merely contended to the jury that the Bible did not prohibit the death penalty, but he did not ask the jury to impose divine law. The prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu*.

[14] Defendant also contends in support of this assignment that the prosecutor improperly argued that defense counsel had "contrived" a defense. It is clear that trial counsel "may not make uncomplimentary comments about opposing counsel, and should 'refrain from abusive, vituperative, and opprobrious language, or from indulging in invectives.' " *State v. Sanderson*, 336 N.C. 1, 10, 442 S.E.2d 33, 39 (1994) (quoting *State v. Miller*, 271 N.C. 646, 658-59, 157 S.E.2d 335, 346 (1967)). However, defendant misconstrues the record. The prosecutor did not argue that defense counsel had contrived a defense; he argued that defendant had done so. Immediately before he characterized the defense as contrived, the prosecutor argued that defendant was not unintelligent. He said defendant was clever in concealing his identity. The prosecutor then contended that the defense was something that came into existence after defendant learned that Bobby had survived. The prosecutor accused defense counsel of nothing. This argument was proper.

[15] Defendant also argues in support of this assignment that the prosecutor's argument that defendant had not shown any remorse for his actions was an improper comment on defendant's exercise of his right to silence. The State is allowed to comment upon a defendant's demeanor in the courtroom during closing arguments, as the prosecutor did here. The jurors are allowed to consider both the evidence and what they observe in the courtroom. *State v. Myers*, 299 N.C. 671,

679-80, 263 S.E.2d 768, 773-74 (1980). Bringing defendant's lack of any demonstration of remorse to the attention of the jury is proper, so long as the prosecutor does not urge the jury to consider lack of remorse as an aggravating circumstance. *State v. Brown*, 320 N.C. 179, 199, 358 S.E.2d 1, 15, *cert. denied*, 484 U.S. 970, 98 L. Ed. 2d 406 (1987).

**[16]** Defendant further contends in support of this assignment that it was grossly improper for the prosecutor to argue in the capital sentencing proceeding that if the jury failed to recommend death, defendant might get out of prison and hurt other people or the surviving victim, Bobby. When the prosecutor made this argument, defendant objected, and the trial court instructed the jury to disregard the argument. The prosecutor then argued that Bobby would not be able to sleep peacefully if the jury came back with a recommendation of anything other than death, because defendant would not be locked up tight on death row. Defendant objected, and the trial court stated to the prosecutor, "I'll ask that you don't argue that point." The prosecutor's arguments in this regard were not improper. *State v. Alston*, 341 N.C. 198, 250-52, 461 S.E.2d 687, 717 (1995), *cert. denied*, 516 U.S. 1148, 134 L. Ed. 2d 100 (1996). Further, any possible impropriety was cured by the trial court's prompt actions.

**[17]** Defendant finally contends in support of this assignment that during the prosecutor's argument at the conclusion of the capital sentencing proceeding, the prosecutor improperly replayed the audiotape of the call that Bobby Jackson made to the 911 emergency communications center. Trial counsel is allowed wide latitude in argument to the jury and may argue all of the evidence and the reasonable inferences that arise therefrom. *State v. Williams*, 317 N.C. 474, 481, 346 S.E.2d 405, 410 (1986). The audiotape was introduced into evidence without objection by defendant. In a capital sentencing proceeding, the jury may consider all of the circumstances surrounding the murder. *State v. Thomas*, 344 N.C. 639, 647, 477 S.E.2d 450, 453 (1996), *cert. denied*, —— U.S. ——, 139 L. Ed. 2d 41 (1997). As the audiotape was admitted into evidence in the guilt phase of defendant's trial, it was proper to play it during closing arguments in the capital sentencing proceeding for the jury's consideration.

For all of the foregoing reasons, this assignment of error is without merit and is overruled.

**[18]** By another assignment of error, defendant contends that the trial court erred during his capital sentencing proceeding by submit-

STATE v. BILLINGS

[348 N.C. 169 (1998)]

ting as a mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1), because defendant had been previously convicted of attempted second-degree murder and had a history of drug-dealing. Defendant specifically requested that this circumstance not be submitted.

The test governing submission of the (f)(1) mitigator is "whether a rational jury could conclude that defendant had no significant history of prior criminal activity." *State v. Wilson*, 322 N.C. 117, 143, 367 S.E.2d 589, 604 (1988). If so, the trial court has no discretion; the statutory mitigating circumstance must be submitted to the jury, without regard to the wishes of the State or the defendant. *State v. Lloyd*, 321 N.C. 301, 364 S.E.2d 316, *sentence vacated on other grounds*, 488 U.S. 807, 102 L. Ed. 2d 18 (1988).

Evidence in the present case tended to show that defendant had been convicted of five misdemeanors and two felonies as well as the unlawful consumption of drugs and alcohol as a child and adult. Based on the evidence of record, the trial court concluded that a reasonable juror could find that defendant had "no significant history of prior criminal activity" within the meaning of the statute and, therefore, that it was required to submit the (f)(1) statutory mitigating circumstance for the jury's consideration. The trial court was correct; in fact, one or more jurors found this mitigating circumstance to exist and weighed it in defendant's favor. This assignment of error is without merit and is overruled.

## PRESERVATION ISSUES

Defendant also raises for "preservation" the following three issues, which he acknowledges this Court has previously found without merit in other cases.

(1) The trial court erred when it instructed the jury on the aggravating circumstance that the murder was "especially heinous, atrocious, or cruel" in terms that were unconstitutionally vague.

(2) The trial court erred in requiring the jury to find that non-statutory mitigating circumstances had mitigating value before considering factually proved evidence offered in mitigation of the sentence of death.

(3) The trial court erred in instructing the jury that each juror was allowed, rather than required, to consider mitigating cir-

cumstances he or she found at Issue Two when weighing the aggravating circumstance against the mitigating circumstances at Issues Three and Four.

We have considered defendant's arguments on these issues and find no reason to depart from our prior holdings. Therefore, we overrule each of these assignments of error.

## PROPORTIONALITY REVIEW

Having concluded that defendant's trial and capital sentencing proceeding were free of prejudicial error, it is our duty to ascertain: (1) whether the evidence supports the jury's findings of the aggravating circumstances on which the sentence of death was based; (2) whether the sentence was entered under the influence of passion, prejudice, or any other arbitrary consideration; and (3) whether the sentence is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. N.C.G.S. § 15A-2000(d)(2). The jury found three aggravating circumstances in the present case. The record fully supports these findings. Further, we find no indication that the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary consideration. We turn then to our final statutory duty of proportionality review.

[19] In the present case, defendant was convicted of first-degree murder based on the theory of premeditation and deliberation and under the felony murder rule. The jury also found defendant guilty of first-degree burglary, assault with a deadly weapon with intent to kill inflicting serious injury, first-degree kidnapping, and first-degree rape. The jury found as aggravating circumstances: (1) that the murder was committed by defendant while he was engaged in committing the felony of rape, N.C.G.S. § 15A-2000(e)(5); (2) that the murder was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9); and (3) that the murder for which defendant stands convicted was part of a course of conduct in which defendant engaged and which included the commission by defendant of other crimes of violence against another person or persons, N.C.G.S. § 15A-2000(e)(11).

Of the sixteen mitigating circumstances submitted, one or more jurors found the following mitigating circumstances: (1) defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1); (2) defendant's mother drank alcohol to excess during defendant's formative years and did not provide proper supervi-

sion, moral teaching, and nurturing of defendant when defendant was a child; (3) defendant's father, who was sixty-eight years old at the time of defendant's birth, drank alcohol to excess during defendant's formative years and did not provide proper supervision, moral teaching, and nurturing of defendant when defendant was a child; (4) defendant's father died when defendant was approximately age eleven, leaving him without proper supervision, nurturing, and moral teachings; (5) defendant has a long history of alcohol and illegal drug abuse beginning when defendant was approximately eleven years of age; (6) defendant's use of alcohol and illegal drugs was condoned by defendant's mother prior to defendant attaining sixteen years of age; and (7) defendant lacked any law abiding role model in his immediate family.

In conducting our proportionality review, it is proper to compare the present case with other cases in which this Court has concluded that the death penalty was disproportionate. *State v. McCollum*, 334 N.C. 208, 240, 433 S.E.2d 144, 162 (1993), *cert. denied*, 512 U.S. 1254, 129 L. Ed. 2d 895 (1994). We have found the death penalty disproportionate in seven cases. *State v. Benson*, 323 N.C. 318, 372 S.E.2d 517 (1988); *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by State v. Gaines*, 345 N.C. 647, 483 S.E.2d 396, *cert. denied*, —— U.S. ——, —— L. Ed. 2d ——, 66 U.S.L.W. 3262 (1997), *and by State v. Vandiver*, 321 N.C. 570, 364 S.E.2d 373 (1988); *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). This case is distinguishable from those cases.

This case has several features which distinguish it from the cases in which we have found the death penalty to be disproportionate. They include the fact that defendant raped the eleven-year-old female victim in her home and then kidnapped and killed her and the fact that defendant repeatedly stabbed the brother of the victim. We find it significant that none of the cases in which this Court has found the death penalty disproportionate involved multiple child victims or multiple violent felonies committed against children during the course of the murder. We have further noted that a conviction upon both theories of premeditation and deliberation and felony murder is significant in finding a death sentence proportionate. *State v. Harris*, 338 N.C. 129, 161, 449 S.E.2d 371, 387 (1994), *cert. denied*, 514 U.S. 1100, 131 L. Ed. 2d 752 (1995).

We also compare this case with the cases in which we have found the death penalty to be proportionate. Although we review all of the cases in the pool of "similar cases" when engaging in our statutorily mandated duty of proportionality review, we have previously stated, and we reemphasize here, that we will not undertake to discuss or cite all of those cases each time we carry out that duty. *State v. Williams*, 308 N.C. 47, 81, 301 S.E.2d 335, 356, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983). It suffices to say that the present case is more similar to cases in which we have found the sentence of death proportionate than to those in which we have found it disproportionate.

After comparing this case to similar cases as to the crime and the defendant, we conclude that this case has the characteristics of first-degree murders in which we have previously held the death penalty proportionate. Accordingly, we cannot conclude that this death sentence is excessive or disproportionate. Therefore, the judgment of the trial court, including the sentence of death, must be and is left undisturbed.

NO ERROR.